WILLIAM A. LEWIS AND JOHN H. WARD, RELATORS, DEFENDANTS IN ERROR, v. THE BOARD OF EDUCATION OF THE MAYOR AND ALDERMEN OF JERSEY CITY, PLAINTIFFS IN ERROR.

WALTER L. McDERMOTT, RELATOR, DEFENDANT IN ERROR, v. THE BOARD OF EDUCATION OF THE MAYOR AND ALDERMEN OF JERSEY CITY, PLAINTIFFS IN ERROR.

Argued June 27, 1901—Decided November 15, 1901.

1. For the purposes of legislation regulating the internal affairs of municipalities there are two sorts of classifications known to the law—*first*, the common law classification of municipalities into counties, cities, boroughs, towns, townships and villages. This classification is independent of statutory prescriptions; it rests upon the common law and is recognized by the constitution of this state. *Second*, the legislative classification by the subdivision of common law municipalities into subordinate classes, and the legislation in respect to any such classes depends upon the appropriateness of the legislative classification.

2. A system of classification which will merely individualize the political districts of the state to which the act shall be applied is insufficient. Something more is required than mere designation by such characteristics as would serve to identify.

3. The classification must rest on some characteristic or peculiarity plainly distinguishing the places included from those excluded, and making the legislation fit and appropriate to those included and inappropriate to those which are omitted. It must embrace all and exclude none whose conditions and wants render such legislation equally appropriate to them as a class.

4. The act of March 23d, 1900 (*Pamph. L., p.* 192), entitled "An act to provide a system of public instruction," and the supplement of March 23d, 1901 (*Pamph L., p.* 222), which provide a different method of government of schools in municipalities which are divided into wards from that in those not divided into wards, is in violation of the provisions of the constitution which prohibit private, local or special laws regulating the internal affairs of towns or counties, and the provision which forbids the passing of any private, local or special law for the management and support of public schools; such a classification is simply a description that would identify places to which this legislation is intended to apply, and possesses none of the characteristics that are regarded as essential to the validity of a law regulating the affairs of a municipality.

On error to the Supreme Court.

These two cases present the same question. They differ only in the names of the relators and the manner in which the litigation was begun. The writ of error in the case first named brings up for review the judgment of the Supreme Court overruling the demurrer of the plaintiffs in error to the alternative writ of *mandamus* directing the board of education of Jersey City to appoint two of its members to a board of school estimate in Jersey City, in accordance with an act entitled "An act to establish a system of public instruction," approved March 23d, 1900 (*Pamph. L., p.* 192), and the supplements thereto. At a meeting of the board of education, held April 11th, 1901, the relator Lewis, who is a member of the board of education, introduced a resolution that the board proceed to an election of two of its members to the board of school estimate, which resolution was defeated by a vote of six of the members present voting in the negative and three in the affirmative. Of those voting in the affirmative, Ward was one.

The writ of *certiorari* brought up certain resolutions of the board of education of Jersey City, passed on the 14th of March and 4th of April, 1901. It is contended by the prosecutors that the said resolutions were passed in violation of the general school laws of 1900 and 1901. It is stipulated in the state of the case agreed upon that in adopting the said resolu-

tions the board of education did not proceed under the provisions of the act of March 23d, 1900, and the supplements thereto, and that the said board has in all its acts disregarded the provisions of said act and the supplements thereto, on the ground that the said acts are unconstitutional and void.

The reasons assigned for reversal present the question whether this law is in violation of those provisions of the constitution which prohibit private, local or special laws regulating the internal affairs of towns or counties, and also that other provision which forbids the passing of a private, local or special law providing for the management and support of the public schools. The Supreme Court, in a judgment, sustained the act now in question and gave judgment accordingly. This writ of error brings up the judgment of the Supreme Court in both cases for review.

For the plaintiffs in error, *John W. Queen* and *Allan L. McDermott.*

For the defendants in error, *John J. Mulvaney* and *Samuel H. Grey,* attorney-general.

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE. The classification made by this legislation for the constitution and government of schools is contained in sections 45 and 46 of the act as amended. Section 45 provides that "In each city, incorporated town, borough, township or other municipality which now is or which shall be hereafter divided into wards, the mayor or other chief executive officer of such municipality shall, after the first day of May and before the thirtieth day of June next after the acceptance of the provisions of this section, as is hereinafter provided, appoint nine persons to be members of the board of education of the school district situate in said municipality, who shall severally possess the qualifications for said membership prescribed in this article. Three of such persons shall be appointed to serve for one year, three for two years and three for three years, and annually thereafter, after the

first day of May and before the thirtieth day of June, the said mayor or other chief executive officer of such municipality shall appoint three members of said board of education to serve for the term of three years, to take the place of those members whose terms shall expire in such year. Any vacancy in such board of education shall be forthwith reported by the secretary of said board to the mayor or other chief executive officer, who shall appoint a person to fill such vacancy for the unexpired term. To every such appointee, as aforesaid, said mayor or other chief executive officer shall issue and deliver a certificate of his appointment. The term of office of a member of the board of education, except a member appointed to fill an unexpired term, shall begin on the first day of July next succeeding his appointment." Section 46 provides that "In each city, incorporated town, borough, township or other municipality which now is or which shall be hereafter divided into wards, there shall be elected at the first municipal election held in such municipality next after the acceptance of this section as is hereinafter provided, nine persons to be members of the board of education of the school district situate in said municipality, who shall severally possess the qualifications for said membership prescribed in this article. Three of such persons shall be elected to serve for one year, three for two years and three for three years; and thereafter, at the regular municipal election in such municipality in each year, there shall be elected three members of said board of education to serve for the term of three years to take the place of those members whose terms shall expire in such year. Should any vacancy occur in such board of education, the remaining members of said board shall appoint a person to fill such vacancy to serve only until the next succeeding municipal election in said municipality, at which election a member shall be elected to serve for the unexpired term. The term of office of a member of the board of education, except a member elected to fill an unexpired term, shall begin on the first day of July next succeeding his election." *Pamph. L.* 1901, *p.* 222. Section 83 provides for the acceptance of the provisions of sections 45 and 46 by the qualified voters of any

municipality "which now is or which shall be hereafter divided into wards, at a general or municipal election to be held therein." The basis of classification adopted in this legislation is the fact of the division of municipalities into wards. In the brief of the plaintiffs in error these classes are designated as class A and class B. For convenience I will adopt the same method of distinguishing. Class A comprises cities, incorporated towns, boroughs, townships and other municipalities which now are or hereafter shall be divided into wards; class B comprises all other municipalities in the state, that is, municipalities not divided into wards. The former are organized under article VI. of the original act as amended by the act of 1901, with powers and duties in connection with the control and management of public schools comprised in sections 45 to 184, inclusive, and the amendments. The latter are organized under section 85, article VII., of the original act, with the powers, duties and control of schools comprised in sections 85 to 106, inclusive.

An examination of this legislation discloses material diversities in the organization, management, powers and control of the boards of education in the two classes of municipalities. It is not necessary to go into particulars in that respect. The case, then, resolves itself into the question whether the classification adopted in this legislation is valid.

For the purposes of legislation regulating the internal affairs of municipalities there are two sorts of classifications known to the law: *First,* the common law classification of municipalities into counties, cities, boroughs, towns, townships and villages. This classification is independent of statutory prescriptions; it rests on the common law and is recognized by the constitution of this state. Hence an act of the legislature which applies to any one of these political subdivisions is *per se* a general law, within the meaning of the constitutional provision. But the subdivision of common law municipalities into subordinate classes is a legislative classification, and legislation with respect to any of such classes depends upon the appropriateness of the legislative classification. A system of classification which will merely

individualize the political districts of the state to which the act shall be applied is plainly insufficient. Something more is required than mere designation by such characteristics as would serve to identify. The classification must rest on some characteristic or peculiarity plainly distinguishing the places included from those excluded and making the legislation fit and appropriate to those included and inappropriate to those which are omitted. It must embrace all and exclude none, whose conditions and wants render such legislation equally appropriate to them as a class. For instance, population is a legitimate basis of classification in statutes relating to the structure, machinery and powers of municipal government, where population bears a reasonable relation to the necessities and proprieties of the various grades of municipal government; but population cannot be made the basis of classification where it does not bear a reasonable relation to the necessities and proprieties of the various grades of municipal government. *State* v. *Hammer,* 13 *Vroom* 435, 440; *Rutgers* v. *New Brunswick, Id.* 51; *Van Giesen* v. *Bloomfield,* 18 *Id.* 442; *Wood* v. *Atlantic City,* 27 *Id.* 32; *Atlantic Water Works Co.* v. *Consumers Water Co.,* 17 *Stew. Eq.* 427; *Wanser* v. *Hoos,* 31 *Vroom* 482; *Boorum* v. *Connelly, ante* p. 197; *McArdle* v. *Jersey City, post* p. 590.

An examination of the census of 1900, as published in Fitzgerald's Manual of the Legislature of New Jersey (1901), discloses the fact that the division of municipalities into wards is not based upon population. It also discloses the discrepancy between the population of those municipalities which are divided into wards. By the act of March 8th, 1882, which is a supplement to an act entitled "An act relating to the division of certain cities of this state into wards" (*Pamph. L., p.* 70), it was provided that all cities not already divided into wards or districts, and all incorporated towns or municipalities, by whatever name or title said cities, towns or municipalities may be designated, in which more than six hundred votes are polled at any annual election, may be divided into two or more wards. *Gen. Stat., p.* 725, § 1287. By the second section of that act the common council or other governing

board or body in any such city, town or municipality, by whatever name or title it may be called, was authorized and empowered to determine the number of wards into which such city, town or other municipality should be divided, and the boundaries of said wards, and was authorized and empowered to make such division accordingly. The division of municipalities into wards has no relation whatever to the management and control of public schools and the support of education. Nor does it in any manner indicate the needs of the community in providing schools for the education of children. As a standard of classification, the method adopted by this law is purely arbitrary.

The city of Newark, with a population of two hundred and forty-six thousand and seventy, is divided into fifteen wards; the city of Trenton, with a population of seventy-three thousand three hundred and seven, is divided into fourteen wards; the city of Elizabeth, with a population of fifty-two thousand one hundred and thirty, is divided into twelve wards; the city of East Orange, with a population of twenty-one thousand five hundred and six, is divided into five wards; the town of Hackensack, with a population of nine thousand four hundred and forty-three, is divided into five wards; the township of North Bergen, with a population of nine thousand two hundred and thirteen, is not divided into wards; the city of Burlington, with a population of seven thousand three hundred and ninety-two, is divided into four wards; the township of Woodbridge, with a population of seven thousand six hundred and thirty-one, is not divided into wards; the town of West Orange, with a population of six thousand eight hundred and eighty-nine, is not divided into wards; the city of Gloucester, with a population of six thousand eight hundred and forty, is divided into two wards; the township of Middletown, with a population of five thousand four hundred and seventy-nine, is not divided into wards; the village of South Orange, with a population of four thousand six hundred and eight, is not divided into wards; the city of Bordentown, with a population of four thousand one hundred and ten, is divided into three wards; the city of Woodbury, with a population of

four thousand and eighty-seven, is divided into three wards; the city of Ocean City, with a population of one thousand three hundred and seven, is divided into two wards.

It is sought to justify this classification on the ground that in these municipalities there are governing bodies more capable of managing, conducting and controlling the public schools than in other localities. This argument is fallacious. Why should it be given to a city or municipality having two wards, and denied to a city which has not been divided into wards; and why should there not be a discrimination in this respect in favor of the larger cities, as, for instance, Newark, with its fifteen wards, as contrasted with Ocean City, with its two wards? The classification adopted by this act is simply a description that would identify places to which this legislation was intended to apply, and possesses none of the characteristics that are regarded as essential to the validity of a law regulating the internal affairs of a municipality.

The judgments of the Supreme Court sustaining this legislation set aside the resolutions of the board of education of Jersey City—proceedings which without this legislation were valid—and coerced the board of education to adopt the scheme of management of public schools in Jersey City provided by the later legislation, which is at variance with the previously existing mode of administering the affairs of public schools in that city.

Being of the opinion that the legislation in question is unconstitutional, the judgments of the Supreme Court should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, DEPUE (CHIEF JUSTICE), VAN SYCKEL, GARRISON, COLLINS, FORT, GARRETSON, ADAMS, VREDENBURGH, VOORHEES, VROOM. 11.