THE STATE, FRANCIS C. LOWTHORP, PROSECUTOR, v. THE INHABITANTS OF THE CITY OF TRENTON ET AL.

1. By an act of the legislature (*Pamph. L.* 1896, *p.* 43) it is provided that upon the adoption of its provisions by the legal voters of any city of the "second class"—*i. e.*, of a population between twelve thousand and one hundred thousand—land may be purchased and buildings may be erected or repaired to be used for high school purposes, where existing buildings devoted to such purposes are unsuitable, and that the money therefor may be raised by long-term bonds. It was admitted in this cause that not only in the cities selected, but also in smaller as well as larger cities and in incorporated towns not cities, the high school course is taught and there are separate buildings devoted to high school purposes. *Held*, that—

1. The act cited contravenes article 4, section 7, paragraph 11 of the constitution, viz., "The legislature shall not pass private, local or special laws in any of the following enumerated cases, that is to say : * * * regulating the internal affairs of towns and counties, * * * providing for the management and support of free public schools. * * * The legislature shall pass general laws providing for the cases enumerated in this paragraph." * * *

2. Said act is not made general by being construed with an earlier act (*Pamph. L.* 1895, *p.* 61) providing for like powers absolutely in cities of the "first class"—*i. e.*, of a population exceeding one hundred thousand—or with certain other acts intended to authorize cities generally to issue bonds for school-house purposes. *Gen. Stat., tit.* "*Schools,*" *pl.* 183, 357, 364, 414, 495.

2. *Quære.* In regulating by law the internal affairs of towns classified by the form of their incorporation, is it constitutional, except with regard to the structure and machinery of the municipal government, to specially classify such towns on the basis of their population?

3. *Quære.* In providing by law for the management and support of free public schools, is it constitutional to classify towns both by their form of incorporation and by their population?

---

On *certiorari*, by a taxpayer, removing a resolution of the common council of the city of Trenton, appropriating $150,000 for the purchase of lands and the erection of buildings thereon to be used for high school purposes.

Argued at February Term, 1898, before Justices DIXON and COLLINS.

For the prosecutor, *John H. Backes.*

For the defendants, *George W. Macpherson* and *John Rell-stab.*

The opinion of the court was delivered by

COLLINS, J.  To support the resolution under review, the defendants rely upon chapter 21 of the public laws of the year 1896 (*Pamph. L., p.* 43), namely :

"An act concerning cities of the second class in this state and providing for the purchase of lands and the construction and repair of buildings for high school purposes in such cities.

" 1. *Be it enacted by the Senate and General Assembly of the State of New Jersey,* That whenever the board of education or other body having charge of the public schools in any city of the second class in this state shall, by resolution, determine that the property or buildings devoted to high school purposes in such city are improperly located, or said buildings are unsanitary, inadequate or otherwise unsuitable for high school purposes in said city, by certificate signed by the president, secretary or clerk of said board or body, it shall be lawful for the common council or other governing body of such city, or board having charge of the finances of such city, by resolution, to appropriate such sum of money, not exceeding one hundred and eighty thousand dollars, as they, in their discretion, shall determine, for the purchase of lands and the erection of buildings or for the repairs and improvement of buildings used or to be used for high school purposes. ·

" 2. [Authorizes the common council to borrow the money so appropriated and issue bonds therefor, payable in not less than twenty nor more than thirty years ; the interest and at least three per cent. per annum of the principal, for a sinking fund, to be raised by tax each year.]

" 3. [Makes it the duty of the board of education, upon such an appropriation, to at once purchase land and erect

buildings, or to reconstruct, repair or improve buildings for high school purposes. Land can be purchased only on concurrence of the common council; title to be taken in the corporate name of the city.]

" 4. [Directs a separate account for the funds and makes it. subject to draft by the board of education.]

" 5. [Provides that the act shall take effect immediately but shall remain inoperative in any city until assented to by a majority of the legal voters thereof voting at an annual charter election on prescribed notice; the vote in form to be on the adoption of the provisions of the act.]

"Approved March 5th, 1896."

At the charter election held in Trenton on April 14th, 1896, out of a poll of eleven thousand one hundred and nine votes, three thousand nine hundred and eighty-one of those voting cast ballots in favor of, and two thousand two hundred and forty-three of those voting cast ballots against the adoption of the provisions of this act. Probably under a declaratory statute, approved March 24th, 1896 (*Pamph. L., p.* 123), such an assent would suffice to make the act operative if properly submitted to vote and constitutional. The legality of the notice of submission and of the subsequent municipal procedure is challenged; but we find it unnecessary to pass upon the questions raised in those respects because we agree with the contention of the prosecutor that the act is unconstitutional.

*First.* The ground assigned for this contention is that the act is a special and local law regulating the internal affairs of towns. Such a law is forbidden by the constitution. *Art.* 4, § 7, ¶ 11. The act admittedly regulates the internal affairs of the cities it embraces, and as cities have been adjudged to be within the prohibition (*Pell* v. *Newark,* 11 *Vroom* 550), all that we have had to consider in this aspect of the case has been the question of whether, as a regulation of such internal affairs, this act is local and special. This question turns on classification.

Towns are variously incorporated, as cities, boroughs, townships, &c., and laws regulating internal affairs, though limited to a class of towns distinguished only by such arbitrary incorporation, may nevertheless be general. *New Brunswick* v. *Fitzgerald,* 19 *Vroom* 457; *Johnson* v. *Asbury Park,* 29 *Id.* 604; *affirmed,* 31 *Id.* 427. Towns, or such classes of towns, may also be constitutionally classified for legislation by characteristics to which the purpose of the law relates, if all with those characteristics are included in the class (*Anderson* v. *Trenton,* 13 *Id.* 486; *Hammer* v. *State, ex rel. Richards,* 15 *Id.* 667), and a law within a valid classification will not be deprived of generality by making its local operation depend upon assent of voters. *In re Cleveland,* 23 *Id.* 188. We must examine, therefore, the classification of this act. The words "cities of the second class" are given their meaning by the act of March 4th, 1882 (*Gen. Stat., p.* 458), which constitutes four so-called classes of cities, namely, those of more than one hundred thousand inhabitants, the first class; those of not less than twelve thousand nor more than one hundred thousand inhabitants, the second class; all others except those binding on the Atlantic ocean, being seaside or summer resorts, the third class, and those last excepted, the fourth class. The city of Trenton falls within the second of these classes.

It may fairly be argued that a classification—not evasive or illusory, but made *bona fide* for all purposes of municipal legislation—of the cities or other towns, or of all the towns of the state, according to their magnitude, would be constitutional. Under a prohibition similar to that of our constitution, this has been judicially declared. *Wheeler* v. *Philadelphia,* 77 *Pa. St.* 338; *Chalfant* v. *Edwards,* 173 *Id.* 246. But this court has held that this particular act of 1882 is not of that character; that it is a mere interpreting statute, enacted for convenience of legislation, and not a classification act at all. *Warner* v. *Hoagland,* 22 *Vroom* 62; *Calvo* v. *Westcott,* 26 *Id.* 78; *Foley* v. *Hoboken, ante p.* 478.

Therefore, the act now challenged makes its own classifi-

cation, and by that it must be tested. The characteristic selected by the legislature is a population within the range of from twelve thousand to one hundred thousand inhabitants.

For some purposes—*e. g.*, regulating the structure and machinery of government—individual acts of legislation may be limited to municipalities distinguished only by their greater or lesser magnitude and in such cases the line of division must be at legislative discretion. *Randolph* v. *Wood*, 20 Vroom 85; *affirmed*, 21 *Id.* 175. But it is well settled that only where the purpose of the law has reasonable relation to magnitude can that characteristic constitutionally be made the basis of the classification. *Wanser* v. *Hoos*, 31 *Id.* 482.

We need not yield assent to the argument of the prosecutor that it is only with respect to structure and machinery of municipal government that the regulation, by law, of the internal affairs of towns, in classes constituted both on the basis of the form of incorporation and on the basis of population, is permissible. Such hitherto has been the extent of judicial support needed for this double classification and perhaps that is its logical restriction. In *Millburn* v. *South Orange*, 26 Vroom 254, doubt was expressed of the constitutionality of a statute authorizing a sewerage system in villages with a specified population to the square mile and having a public water-supply. Mr. Justice Van Syckel, speaking for this court, said: "Whether the conjunction of these circumstances furnishes legal basis of a classification for such legislation applicable only to villages and not including towns and boroughs under like conditions may be doubted, but no opinion is intended to be expressed upon this point." The proceedings then under review were held invalid for other reasons. It is sufficient for present purposes to apply the inflexible principle that to sustain as constitutional a law regulating the internal affairs of towns or classes of towns, on the basis of their population, the purpose of the law must have reasonable relation to that characteristic. We can see no such relation in the act *sub judice*, and a recent decision of this court affords a close precedent for holding it invalid. In *Foley* v. *Hoboken, ubi*

*supra,* a statute intended to enable cities of the " second class " to repave streets and issue bonds in payment, was declared unconstitutional. The construction or repair of school buildings no more relates to the population of cities than does the repaving of the streets. There can be no reason in either case that cities more populous or cities less populous than those selected should be excluded from the benefits and burdens of the law.

It is not, indeed, contended by the defendants that the act of 1896, standing alone, would be valid, but it is argued that there is sound reason for separate high school buildings in large communities and no reason for them in small ones. It is said that the proportion of pupils seeking the higher education is very small, and that only in a comparatively large town are there likely to be enough pupils in the high school course to make a separate building necessary. This, it is urged, affords a reason for some legislation as to high school buildings in large cities; details are merely incidental. Our attention is directed to a statute enacted in 1895 (*Pamph. L., p.* 61), by which cities of the " first class " were given absolutely the powers bestowed, in 1896, on cities of the " second class " with the assent of their voters. The statutes are otherwise identical, except that under the act of 1895 the power extends to furnishing as well as building, and the limit of expenditure is fixed at $300,000. It is argued that the act of 1896 simply lowers the line of demarcation between large and small cities, a matter purely within legislative discretion, and that the two statutes should be read together. The case of *Calvo* v. *Westcott, ubi supra,* is invoked as authority for the doctrine that, in considering a statute, the court must look at its statutory environment. That decision upheld a law changing the power of appointment of police justices in cities of the " second class," having more than fifty thousand inhabitants, from the city council to the governor of the state, who already had been given like power in cities of the " first class." The later act was treated as simply an extension of

the policy of the earlier law. The cases are not parallel, for in the particulars above noticed the acts of 1895 and 1896 are dissimilar. In the one statute power is conferred upon municipal boards, in the other it is conditioned upon a popular vote. But waiving this distinction the only effect of the doctrine of the case cited is to broaden the range of the inquiry. The classification of the two acts together must still be vindicated. In Calvo v. Westcott this effect was reached by the determination that mere excess of population may create a condition that renders it desirable that the appointment of those who are to administer the criminal law shall be removed from local influences.

We can discover no vindication for the acts of 1895 and 1896. Their classification is based on the one hand upon the fact that the cities selected are large cities, and on the other hand upon the fact that those cities may have " property or buildings devoted to high school purposes " that may be unsuitable. There is no reasonable relation between these facts. It is stipulated in this cause that in certain cities of the " third class " the high school course is taught, and that some of those cities have separate buildings used only for high school purposes. How can their exclusion from the challenged legislation leave it general?

It is not accurate to say that the purpose of the legislation was to afford separate high school buildings. It will not be argued that a city of the required population cannot invoke the act appropriate to it unless its high school is housed in a separate building, or that a building constructed under such act must be used wholly for high school purposes. The fundamental classification is of cities having high schools. No statute of this state defines a public high school, and none except those now before us recognize such an institution. The grading of pupils and schools is matter of administration, and varies with localities. It is common knowledge that so-called high schools differ greatly in length of course and range of study. This classification, therefore, seems elusive. We do not say that in a law otherwise general it might not be

upheld ; but surely a law dealing with high schools in cities, to be general,. must extend to all cities. having high schools under like conditions.

It is also a mistaken assumption that the vital provisions of these acts, for borrowing money on long-term bonds, are merely incidental. No legislation was needed to authorize construction or repair of a school building. The annual tax levy is always available. The gist of the new enactment lay in the power to borrow money and anticipate taxation for a term of years. No reason is perceptible for granting such power to large cities in order to enable them to purchase land and erect buildings or to repair existing buildings for high school purposes that does not apply equally to small cities having like needs. Indeed, the balance of argument would be the other way ; for it would be more difficult for a small city than for a large one to tax itself to raise a large sum of money in a single year.

It is suggested that the amount needful for high school buildings must be greater in large cities than in small ones, a difference recognized by providing $300,000 for first-class cities in the act of 1895 and only $180,000 for second-class cities in the act of 1896 as the maximum of expenditure and that therefore the legislature was justified in limiting the acts to those cities in which the authorized expenditure is warrantable, leaving smaller cities to avail themselves of the numerous statutes already existing under which in any city, up to stated· limits of expediture, land may be purchased, school-houses may be erected and bonds may be issued therefor. There are such statutes (*Gen. Stat., tit. "Schools," pl.* 183, 357, 364, 414, 495), but no one of them will harmonize with the scheme of either the act of 1895 or that of 1896 or with that common to both those acts. A sliding scale of authorized expenditure based upon population would be proper enough in a law otherwise general ; but the mere fixing of a limit of expenditure in an isolated statute or in a series of statutes cannot of itself constitute generality. The limit of expenditure is not that purpose of the enactment which, as has been adjudged,

must have reasonable relation to magnitude in order to make general a law limited to a class of towns constituted on the basis of population. It is a mere incident that may in a proper case be measured by population, but to hold that in itself it can make a law general that would otherwise be local and special would permit an evasion of the constitution in every conceivable case.

*Second.* The constitutional prohibition of local or special laws extends to laws "providing for the management and support of free public schools." An act providing for the construction or repair of school buildings at the public charge comes within that designation. All that has been said as to regulating the internal affairs of towns applies with equal force in this regard, with the additional objection that the arbitrary classification of towns by their form of incorporation seems clearly out of place in school legislation, based on the magnitude of the towns, however we may regard it in the regulation of their internal affairs. A *borough* of twelve thousand inhabitants, with an unsuitable high school building, is in no respect dissimilar to a *city* of the same population, so far as the purpose of such legislation is concerned. The stipulation in this cause admits the existence of boroughs and incorporated towns, not cities, that fall precisely within the act of 1896. A school law that excludes those municipalities cannot well be general.

The prosecutor has limited his constitutional objection to a claim that the act challenged as local and special regulates the internal affairs of towns. If he desire he may amend the "reasons" filed by adding a claim that it also provides for the management and support of free public schools.

We hold the act of March 5th, 1896, unconstitutional, and the resolution removed by the prosecutor and all subsequent action based thereon will be set aside, with costs.