THE STATE, FRANCIS C. LOWTHORP, PROSECUTOR, DE-FENDANT IN ERROR, ADS. THE INHABITANTS OF THE CITY OF TRENTON, PLAINTIFFS IN ERROR.

| 62 | 795 |
| 65 | 278 |
| 62 | 795 |
| 66 | 208 |
| 62 | 795 |
| c69 | 105 |
| c69 | 653 |

Argued December 2, 5, 1898—Decided December 30, 1898.

The constitution of the state (article 4, section 7, placitum 11) prohibits the legislature from passing any private, local or special laws regulating the internal affairs of towns and counties. It also interdicts the passage of such laws for the purpose of providing for the management and support of free public schools.  *Held—*

1. That the first-cited prohibition does not forbid the division of the cities of the state into classes, on the basis of population, for the purposes of legislating with regard to their internal affairs, when population bears a reasonable relation to the subject-matter of the legislation, but that such relationship exists only when the legislative enactment deals with the structure or machinery of municipal government.

2. That the classification of municipalities for the purpose of legislating with relation to the management and support of our free public schools (if permissible at all) must, in order to be valid, include in the class to be affected by the legislation every political division of the state whose conditions and wants render the legislation appropriate.

3. *Quære.* Is the classification of municipalities for the purpose of legislation with relation to the management and support of free public schools permitted at all by the constitution?

On error to the Supreme Court.   For opinion of the Supreme Court, see 32 *Vroom* 484.

For the plaintiffs in error, *John Rellstab* and *George W. Macpherson.*

For the defendant in error, *John H. Backes.*

The opinion of the court was delivered by

GUMMERE, J.  The legislature of this state, by a statute approved March 5th, 1896, entitled "An act concerning cities of the second class in this state and providing for the purchase of lands and the construction and the repair of buildings for high school purposes in such cities," enacted that whenever the board of education or other body having charge of the public schools in any city of the designated class should by resolution determine " that the property or buildings devoted to high school purposes in such city were improperly located or such buildings were unsanitary, inadequate or otherwise unsuitable for high school purposes," it should be lawful for the governing body of such city to appropriate such sum of money, not exceeding $180,000, as they in their discretion should determine, for the purchase of lands and the erection of buildings, or for the repair and improvement of buildings used or to be used for high school purposes.  The statute was given effect immediately upon its passage and approval by the executive, but was to remain inoperative in any of the specified cities until assented to by a majority of the legal voters thereof voting at an annual charter election.  On April 14th, 1896, this statute was submitted to the voters of the city of Trenton in the method provided therein for their assent at an annual election held upon that day.  It will be assumed, for the purpose of deciding this case (although the fact is contested), that at such election the act was assented to by a majority of the legal voters of the city. Afterward the commissioners of public instruction of that city passed a resolution "that the school buildings and grounds on Mercer street devoted to high school purposes, are inadequate and unsuitable for such purposes," and then resolved that the sum of $150,000 be appropriated for the purchase of lands and the erection of buildings thereon to be used for high school purposes ; out of which amount they determined, by a subsequent resolution, to purchase a tract of land located in said city for the purpose of erecting a high school thereon.

The legality of those municipal proceedings is challenged

by the defendant in error, and whether or not they can be sustained depends upon the validity of the statute under which they were had. That statute was declared by the Supreme Court to be void for two reasons—*first*, because it was forbidden by the constitutional provision which prohibits the passage of any special or local law regulating the internal affairs of towns; *second*, because it was also violative of the provision of that instrument interdicting the passage of such laws providing for the management and support of free public schools. *Lowthorp* v. *Trenton*, 32 *Vroom* 484.

We concur in the view expressed by the Supreme Court, that this statute was passed in disregard of both of these constitutional provisions. That it regulates the internal affairs of cities is conceded; that it is special legislation within the meaning of the constitutional provision, as defined by a long line of cases, is clear. It attempts to classify cities, for the purpose of the legislation indicated, solely upon the basis of population, limiting the effect of such legislation to cities of the second class—*i. e.*, cities having not less than twenty thousand and not more than one hundred thousand inhabitants. That our cities may be classified on the basis of population, under statutes relating to municipal affairs, when population bears a reasonable relation to the subject-matter of the legislation, has frequently been decided, but such relationship exists only when such legislation deals with the structure or machinery of municipal government. Classification on the basis of population, for any other purpose than those mentioned, is illusive and unsubstantial, and consequently is within the constitutional prohibition. This was the ground of the decision of this court in the late case of *Wanser* v. *Hoos*, 31 *Vroom* 482, and subsequently of the Supreme Court in the well-considered case of *Foley* v. *Hoboken*, 32 *Id.* 478. The purchase, construction and maintenance of school property by a municipality has no relation whatever to the governmental apparatus of such municipality, and classification on the basis of population for such a purpose is entirely without legal justification.

It seems equally clear that this statute is prohibited by the second constitutional provision adverted to. Although legislation affecting the cities of the state, to the exclusion of other classes of municipalities, when enacted for the purpose of regulating their internal affairs, is deemed to be general (*New Brunswick* v. *Fitzgerald,* 19 *Vroom* 457), and although cities themselves may be subdivided into classes for that purpose, and only those classes whose conditions and wants render the legislation necessary or appropriate need be embraced therein, such classification is not permissible when the legislation relates to the management and support of our free public schools. That is a subject-matter which concerns not merely some or all of the cities of the state, but the state at large from one end to the other. Classification for the purpose of legislating with relation to this subject (if allowable at all) must, in order to be valid, include in the class to be affected by the legislation every political division of the state, no matter what its structural form of government, whose condition and wants render the legislation appropriate. That this statute has no such scope is admitted on behalf of the plaintiff in error. A number of our towns and boroughs, and some of our townships, are, both in population and in taxable valuation, equal to or greater than some of our cities of the second class, and a legislative scheme looking to the establishment and maintenance of high schools is at least as appropriate to those towns, boroughs and townships as it is to cities having no greater population or taxable valuation.

Whether such classification is permissible at all for such a purpose may well be doubted. The constitutional prohibition against the passage of special or local laws is plainly absolute with regard to some of the matters specified in the provision, and all legislation concerning those matters must apply throughout the whole state in order to be general. For instance, the prohibition against changing the laws of descent, or that against granting to any corporation or individual any exclusive privilege or franchise, or that prohibiting changes of venue in civil or criminal cases, except by general laws,

would be disregarded by a statute regulating either of those subjects which did not include within its provisions every portion of the state, and the omission of the smallest hamlet from the scope of such legislation would render it nugatory. The prohibition with regard to special legislation relating to the management and support of free public schools would seem to be just as absolute as that with regard to the other matters which I have instanced; and if so, such legislation, in order to be valid, must include every portion of the state to which its provisions may be applicable. The judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, LIPPINCOTT, GUMMERE, LUDLOW, BOGERT, HENDRICKSON, VREDENBURGH. 9.

*For reversal*—None.