MICHAEL RICCIO, PLAINTIFF IN ERROR, v. THE MAYOR
AND COUNCIL OF THE CITY OF HOBOKEN, DEFEND-
ANTS IN ERROR.

Submitted July 10, 1903—Re-argued September 9, 1903—Decided
September 21, 1903.

1. For the purpose of legislation "providing for the management
   and support of free public schools," classification of school districts
   is permissible, within due limits of generality, and divergent
   legislation based thereon is not "local or special" within the
   prohibition of article 4, section 7, paragraph 11, of the consti-
   tution.
2. The legislature, upon subdividing the whole territory of the
   state into school districts co-extensive with the municipal bounds
   of the several cities, incorporated towns, boroughs and townships,
   may establish divergent regulations for the management and
   support of the schools, based merely upon the common law
   classification of the municipalities themselves.
3. A legislative classification of school districts, proceeding on lines
   germane to the objects and purposes of the law, may serve to
   make general an enactment providing for the management and
   support of the schools.
4. The so-called General School law of 1902 (*Pamph. L., p.* 69),
   classifies school districts without adhering either to the common
   law classification of municipalities or to any method of classifica-
   tion that is germane to the purposes of the enactment. It is
   therefore unconstitutional as being a local and special law
   providing for the management and support of free public schools.
5. Unconstitutional provisions may be eliminated from a statute
   only where they are interjected into an enactment otherwise
   valid, and are so independent and separable that their removal
   will leave the constitutional features and purposes of the act
   substantially unaffected by the process.

On error to the Supreme Court, whose opinion is reported
*ante p.* 104.

For the plaintiff in error, *John R. Hardin* and *Malcolm W.
Niven.*

For the defendants in error, *Robert H. McCarter,* attorney-
general, *James F. Minturn* and *Michael Dunn.*

The opinion of the court was delivered by

PITNEY, J.   The question presented for solution is the constitutionality of the so-called General School law of 1902, entitled "An act to establish a system of public instruction." *Pamph. L., p.* 69.   It is attacked as being a "local or special law, providing for the management and support of free public schools," and therefore prohibited by article 4, section 7, paragraph 11, of the constitution as amended in 1875.

The act contains two hundred and fifty sections.   Our present inquiry relates particularly to those portions that have to do with the home government of the schools, as distinguished from state and county supervision.   Sections 33 to 41 are grouped under article 5, with the caption "School Districts."   Sections 42 to 80 are grouped under article 6, with the caption "Boards of Education in City School Districts."   Sections 81 to 99 are grouped under article 7, with the caption "Boards of Education in Township, Incorporated Town and Borough School Districts."   Articles 6 and 7 provide separate codes for the school districts covered thereby respectively.   The differences relate principally to the mode of choosing the local trustees, and to the method of raising moneys for the support and maintenance of the schools.   For city districts there is a referendum to the people of the question whether the board of education shall be appointed by the mayor or shall be elected by the people. The annual financial budget is to be made up by a board of school estimate, of which two members are to be appointed by the board of education from its own membership, and the common council or other body having power to make appropriation of moneys raised by tax in such city, is to appoint two from its membership, and these four, together with the mayor or other chief executive officer of the city, are to constitute the board.   The same board determines the amounts necessary to be raised for the purchase of lands and construction, &c., of school buildings—the power of appropriating and borrowing money for the purpose being reposed in the common council or other municipal body.   In the township,

incorporated town and borough school districts the board of education is to be chosen by the people at the annual school meeting. Such questions as the raising of money by district tax, the issuing of bonds, the purchase of lands and construction of school buildings, and the condemnation of land, are to be decided by vote of the people of the district. The specific provisions respecting the raising of a district tax for school purposes are found in sections 179 and 180; those relating to school district bonds are found in sections 188 to 193.

From the opinion delivered by Mr. Justice Dixon in the Supreme Court, it is manifest that the only question discussed before that court was the constitutional validity of a classification of school districts for the purpose of divergent legislation, made by placing all city school districts in one class and all other school districts in another class. The act was dealt with as if, either by its terms or by force of previous legislation, all the school districts of the state were coterminous with the bounds of some municipality.

In this court certain features of the act not adverted to below were pointed out and discussed. As will be presently shown, they result in subdividing the two principal classes of districts just mentioned and bring into play special discriminations, so that the act does not operate uniformly in all cities, nor uniformly in all the other forms of municipality.

Our constitution, since the amendments of 1875, has recognized the common law classification of municipalities into counties, cities, incorporated towns, boroughs, villages and townships, and it is already established by repeated decisions of this court that the constitutional inhibition against special legislation regulating the internal affairs of municipalities is not violated by laws that make distinctions between the different forms of municipalities, based merely on the common law classification. *Hermann* v. *Guttenberg*, 34 *Vroom* 616; *Boorum* v. *Connelly*, 37 *Id*. 197.

It is equally well settled that where the legislature makes a

departure from the common law or constitutional classification, either by subdividing one of the classes or by excepting a part of a class from a given legislative scheme, the legislative classification thus resorted to must be germane to the purposes of the enactment—it must rest on peculiarities or characteristics that substantially differentiate the localities included from those excluded, and that render divergent legislative enactments appropriate to the several localities respectively.

In the present case we have to consider not only the constitutional prohibition of special laws regulating municipal affairs, but the additional prohibition of special laws "providing for the management and support of free public schools."

In *Lowthorp* v. *Trenton,* 33 *Vroom* 795, this court, speaking through the present Chief Justice, intimated a doubt whether under this clause any classification of schools or of school districts was permissible. Upon full consideration we are now unanimously of the opinion that such classification, within due limits of generality, is permissible. Assuming that, for purposes of local management and support, a single school might be treated as a natural, logical unit, and that the adjacent territory, whose children should attend there for education and whose citizens and property owners ought to contribute especially to its support and to have voice in its management, might be set apart as a "school district," we entertain no doubt that these units may be grouped together so that single districts may be made to comprise numerous schools, combined for purposes of local government.

We are likewise unanimous in the view that schools and school districts having characteristics so nearly alike as to require similar treatment in legislation may be grouped together in classes, and that such classification may be made the basis of divergent legislative provisions, appropriate to the different classes respectively. In the opinion of all, a legislative classification of school districts, proceeding on lines germane to the objects and purposes of the law, would serve to make general an enactment providing for the management and support of the free public schools.

Upon one question, however, the court is divided, and upon only one. It is this: May the legislature, upon subdividing the whole territory of the state into school districts co-extensive with the municipal bounds of the several cities, incorporated towns, boroughs and townships, establish divergent regulations for the management and support of the schools, based merely upon the common law classification of the municipalities themselves? A majority of the members of the court have reached the conclusion that this question is to be answered in the affirmative. They consider that the management and support of the schools is so much a matter of local concern as to admit of legislative treatment according to the same lines of classification that apply to the general internal affairs of municipalities. They hold, therefore, that the common law classification of municipalities may be adopted in legislating about matters of school management and support when the school districts are made to conform to the corporate limits of the municipalities, and that the declarations to the contrary in the case of *Lowthorp* v. *Trenton,* 32 *Vroom* 484; 33 *Id.* 795, have been in effect overruled by the later cases of *Hermann* v. *Guttenberg,* 34 *Id.* 616; *Boorum* v. *Connelly,* 37 *Id.* 197, and *Lewis* v. *Jersey City,* 37 *Id.* 582.

A minority of the judges, including the writer of this opinion, have found ourselves unable to adopt this view. We give to the constitutional prohibition of special laws respecting schools an independent force and effect, unqualified by the prohibition respecting municipal legislation. We read it in connection with the constitutional mandate that "the legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in this state between the ages of five and eighteen years." Assuming that the legislature might make the schools a matter of special concern to the several municipalities, either by establishing school districts coterminous with municipal districts, but having separate local government, or even by delegating the

management and support of the schools to the municipal governments themselves, we are unable to see how the constitutional prohibition of special laws for the management and support of the schools can be thus deprived of effect. Differences in the mode of school management and support that are made to depend upon the mere circumstance that one group of schools is located within a "city," and another group located within an "incorporated town," seem to us inconsistent with the constitution. Such was the decision in the Lowthorp case, and we are unable to see that that decision has been expressly, or by necessary implication, overruled up to the present time.

Accepting, however, the view of the majority in the present case as settling the law upon this topic, it follows that if the statute under consideration had made the school districts everywhere coterminous with municipal boundaries, and had based its divergent provisions respecting school management and support upon the common law classification of the municipalities, the act would have been sustained.

But we are all of the opinion that this act contravenes the constitution, in that while assuming to adopt in general the common law classification, it makes exceptions and distinctions with respect to certain school districts that are arbitrarily set apart and separately legislated about, or left subject to previous legislation, in such a manner as to render the act local and special within the constitutional interdict.

How this is done, we will attempt to point out. As already remarked, article 6 assumes to provide a code of government for "city school districts," article 7 a code for "township, incorporated town and borough school districts." If all school districts were included in one or the other of these classes, and if each code consisted of regulations uniformly operative upon the class in question, the common law method of classification would be satisfied. Such, however, is not the case.

The provisions respecting the delimitation of the districts are found principally in section 33 of the act, which reads as follows:

"33. Each township, city and incorporated town shall be a separate school district, but each incorporated villáge and each borough hereafter created shall remain and be a part of the school district in which said incorporated village or borough shall be situate at the time of its incorporation; and each borough heretofore incorporated which shall not have assumed the functions of a separate school district by the election of a board of education, or which shall not have actually acted as a separate school district, shall be and remain, and shall be deemed to have been and remained, a part of the school district in which it was situate at the time of its incorporation as a borough, any law to the contrary notwithstanding; *provided,* that whenever it shall appear to the state superintendent of public instruction that the best interests of any borough require that it be a separate school district, he shall make an order creating such borough a separate school district; such order shall not take effect until approved by the state board of education; *provided further,* that nothing in this section shall be construed as abolishing any school district which shall have assumed the functions of and acted as a separate school district by the election of a board of education prior to the introduction of this act, or changing the boundaries of any school district possessing complete official autonomy prior to the introduction of this act, but such district shall be and remain a separate school district until consolidated with an adjoining school district as hereinafter provided."

It will be perceived at once that this section makes little, if any, change in the territorial boundaries of the districts as they existed *de facto* at the time the act was passed. The case is submitted to us without either findings of fact, or evidence upon which to base a finding of fact, determining the actual bounds of the school districts as they existed prior to this act. If, however, they had been uniformly coterminous with municipal boundaries, the second proviso of section 33 would have been uncalled for. Therefore, that proviso amounts to a legislative declaration that there existed certain school dis-

tricts whose boundaries did not conform to the limits of the municipalities. It is a matter of common knowledge that prior to the year 1894 such non-conformity was the rule, and not the exception. Partly under special charters and partly under the operation of general laws, the territory of the state had been divided, for the purposes of school management and support, in such manner that a single township or other municipality often comprised several school districts, while certain other school districts were made up of parts of two or more townships, or even parts of two or more counties, and in some instances a single district was so made up as to comprise the whole territory of a municipality and part of an adjoining territory. By an amendment to the General School act of 1874, approved May 25th, 1894 (*Pamph. L., p.* 506; *Gen. Stat., p.* 3055), an attempt was made to render district lines generally conformable to municipal boundaries, but the operation of the act was in this respect limited by certain provisos, notably those contained in sections 23 and 24, which made special regulations with regard to school districts acting under special charters. In the following year a further supplement was enacted (*Pamph. L.* 1895, *p.* 114; *Gen. Stat., p.* 3062), enabling the boards of education of any two adjoining school districts to alter the boundary line between their districts. And still another supplement (*Pamph. L.* 1895, *p.* 503; *Gen. Stat., p.* 3067) made special provisions respecting the bounds of certain specially incorporated school districts, and at the same time enabled adjoining districts to become consolidated.

We do not undertake to say whether other laws are to be found upon the statute book, under whose operation school district boundaries have been rendered non-conformable to municipal boundaries. Enough has been said to show that section 33 of the present act, by its second proviso, excepts from the force and effect of its earlier clauses a group or groups of school districts set apart by themselves according to arbitrary characteristics that existed at the time of the passage of this act. It would seem that specially incorporated

districts that were excepted from the operation of the act of 1894, districts whose bounds had been so altered since that act as not to be coterminous with a municipality, consolidated districts, and any other district that comprised only a part of the territory of a municipality, or parts of two or more municipalities, or the whole of a municipality and part of another, remain as before. In view of the saving clauses, it is difficult to ascribe any force or effect to section 33 in the direction of rendering existing districts coterminous with the municipalities. What its effect might be upon school districts hereafter created, or upon the territory of municipalities hereafter incorporated, need not be considered. .

Nor are we now questioning the power of the legislature with respect to establishing the bounds of school districts. Our present concern is with the method of their classification for the purposes of this act. It is plain that this classification does not uniformly follow the common law classification of the municipalities, for the districts do not uniformly coincide with the bounds of the municipalities themselves. How many exceptions are permitted by the act is obscure, and there is nothing before us to elucidate this question. That exceptions exist is entirely clear; that they are arbitrarily made is equally so.

An examination of articles 6 and 7 will disclose that the governmental regulations therein contained are applicable in terms only to school districts that are co-extensive with the bounds of a single municipality. It is at least doubtful whether they apply to a district comprising only a part of one municipality, or comprising parts of two or more municipalities. That they were not intended to be applied in their entirety to all the school districts of the state is rendered quite plain by section 244, which is as follows:

"In any school district which comprises a municipality and a portion of an adjoining municipality, members of the board of education shall be selected in the same manner in all respects as they are selected in said district at the time of the passage of this act, and moneys for the maintenance of public

schools therein shall be ordered, assessed, levied and collected
in the same manner as they are ordered, assessed, levied and
collected therein at the time of the passage of this act."

We should note, also, that part of section 249 which declares
that members of boards of education in all township, incor-
porated town and borough school districts shall continue to be
elected or appointed in the same manner as said members
have been heretofore elected or appointed.

Therefore, in respect at least to two principal matters relat-
ing to the management and support of the schools (to wit,
the selection of the local trustees, and the ordering and raising
of moneys for maintenance of the schools), arbitrary excep-
tions have been made from the general applicancy of articles
6 and 7.

In section 250 we find the declaration that "all school dis-
tricts shall hereafter be governed solely by the provisions of
this act," and a general repealer of inconsistent provisions.
It is manifest, however, that this language cannot have the
effect of overriding special saving clauses and provisos con-
tained in the act itself. It cannot subject to the provisions
of article 6 or of article 7 any school district that is not
within the descriptive terms of those articles. Neither can
any district, so far as the selection of members of the board
of education and the ordering and raising of moneys for
school support are concerned, be governed by section 244, and
at the same time be governed by inconsistent provisions
contained in article 6 or in article 7. In short, the lan-
guage quoted from section 250 must be construed as bringing
all school districts within the provisions of this act, so far
and so far only as those provisions in terms apply to any
district in question.

Two further clauses of this act require specific mention at
this point. In section 246 there is a clause confirming all
elections or submissions to the voters of any school district
under the General School law of 1900, of the question whether
in such district the board of education should be elected by the
people or otherwise, with the declaration that in every such

district hereafter the board of education shall, if the people have voted in favor of an appointive board, be appointed and organized under the provisions of section 42 of this act, and if the people have voted in favor of an elective board they shall be elected and organized under the provisions of section 43 of this act. Section 246 at the same time confirms all elections for members of the board of education held pursuant to the act of 1900, and constitutes the members, so elected as the board of education of such school district, a corporation as if organized under section 48 of the present act.

Again, there is a proviso appended to section 250, declaring "that this act shall not repeal or affect the provisions of any general act which may have been or which may hereafter be accepted by a vote of the people in any city or school district in this state."

Now, under the act of 1900 (*Pamph. L., p.* 206, §§ 45, 46) a referendum upon the question whether the school board should be elected or appointed was granted to every municipality, irrespective of its form of incorporation, provided it were divided into wards. In municipalities not divided into wards there was no referendum and the members of the board of education were in all cases to be elected by the people; the only local option being as to the number of members that should constitute the board. *Pamph. L.* 1900, *p.* 217, §§ 85, 86, &c. It was this discrimination between school districts in municipalities divided into wards and school districts in municipalities not so divided that was held illusory and unconstitutional by this court in *Lewis* v. *Jersey City,* 37 *Vroom* 582. Thus the effect of section 246 of the act of 1902, and of the proviso of section 250, in confirming a referendum theretofore held under the act of 1900, is to perpetuate the consequences of an unconstitutional classification of school districts in a limited number of localities that happen to have taken action under the void law prior to the enactment of the present one. For under the present act, while a somewhat similar and perhaps identical referendum is open to city districts, subject to some qualifications (*Pamph. L.* 1902,

*p.* 96, § 80), it is not open to districts that are situate in townships, incorporated towns and boroughs. The referendum contained in section 249 is not identical, for it relates not simply to the method of selecting the school board, but to the powers of the board and the other provisions regulating the management and support of the schools.

If the effect of section 246, in confirming the results of a previous referendum, was to lead to uniformity, it might be supported. *Tiger* v. *Morris Common Pleas,* 13 *Vroom* 631; *Bumsted* v. *Govern,* 18 *Id.* 368; 19 *Id.* 612.

Now, with respect to cities that are divided into wards, the confirmed referendum does tend to uniformity, because, by the act of 1902, they are placed on the same basis as cities not divided into wards, and the circumstance of the referendum having been employed prior to the adoption of the act of 1902 might be treated as immaterial. This is on the assumption that the subject-matter of the referendum was the same under the act of 1900 as under the act of 1902, a point we do not stop to critically examine. But with respect to townships, incorporated towns and boroughs that are divided into wards, the effect of section 246 is to produce diversity; for those divided into wards that have heretofore employed the referendum must have an appointive school board if they have so voted, whereas townships, incorporated towns and boroughs that have no wards, and those that have wards but have heretofore voted for an elective board, or did not vote at all upon the question, must hereafter have elective boards.

Returning to section 33, it will be noticed that boroughs are thereby divided into two classes. The territory of boroughs heretofore incorporated, if already organized as a separate school district, is to so remain unless afterwards consolidated with adjoining territory. In boroughs hereafter incorporated, the people are not to have independent school government unless the state superintendent of public instruction and the state board of education shall unite in so determining. If any rational basis exists for this discrimination, it has not been pointed out.

Again, sections 81 and 82 seem to embody some arbitrary discriminations respecting the membership of those boards of education that are subject to the provisions of article 7. It is unnecessary, however, to spend time upon the point. We must not be understood as undertaking to make an exhaustive disclosure of all the special features in so voluminous a statute.

Enough has been said to demonstrate that the act adheres neither to the common law classification of municipalities nor to any legislative classification that is germane to the subject-matter. The classification of school districts is intricate, and not easily followed. Plainly, however, numerous subclasses are dealt with, and these, as a rule, are distinguishable only by unimportant characteristics.

As already appears, these minor classifications (as they may be called for convenience) are made the basis of discriminations in the act that have no reasonable pertinency to the needs or circumstances of the districts thus set apart. The classification is purely arbitrary. It was very properly conceded by the learned attorney-general that in this respect the act under consideration is in contravention of the fundamental law.

It is argued, however, that these unconstitutional features may be treated as excrescences upon the general scheme of the act, and may be totally disregarded, leaving the statute in its main features to remain. Upon this question we adhere to the declaration of Mr. Justice Depue, afterwards Chief Justice, speaking for this court, in *Johnson* v. *State,* 30 *Vroom* 535 (at page 539).: " It is undoubtedly elementary law that the same statute may be in part constitutional and in part unconstitutional, and if the parts are wholly independent of each other, that which is constitutional may stand, and that which is unconstitutional will be rejected. But if the different parts of the act are so intimately connected with and dependent upon each other as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not have passed

the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent upon each other must fall."

In the absence of any express declaration to the contrary contained in the act itself, the presumption is that the legislature intended any given enactment to be effective in its entirety. *Iowa Life Insurance Co.* v. *East. Mutual Life Insurance Co., 35 Vroom* 340, 346. In seeking the legislative intent, the presumption is against any mutilation of a statute, and the courts will resort to elimination only where an unconstitutional provision is interjected into a statute otherwise valid, and is so independent and separable that its removal will leave the constitutional features and purposes of the act substantially unaffected by the process.

Assuming the act *sub judice* to be constitutional in its general features, we might perhaps say that so much of section 246 as undertakes to perpetuate the discriminations that result from the employment of a referendum under a previous unconstitutional statute might be exscinded as a mere excrescence.

But the other discriminations stand, we think, on an entirely different basis. Section 33, for instance, contains in and of itself nothing unconstitutional, unless it be the provisions respecting boroughs. It purports to establish the bounds of the several school districts of the state, and, as already mentioned, it leaves the existing school districts to remain as they stood prior to the passage of the act, no existing school district being abolished or being changed in respect to its boundaries. We are not prepared to say that the legislature may not, by special act, create a school district, just as they create new municipalities, by the delimitation of a specified portion of the area of the state for that purpose. What may be done by specific description may be done by reference to other legislation or by reference to the existing *status*. The unconstitutionality of the present law arises, not from the mode in which the bounds of the several school districts are pointed out in section 33, but from the mode in

which the act elsewhere makes discriminations between different school districts, with respect to the management and support of the public schools therein, on grounds of distinction that render the act local and special. Moreover, if section 33 were unconstitutional in enacting that each township, city and incorporated town shall be a separate school district, while at the same time providing that nothing in the section should be construed as abolishing or changing the boundaries of any existing school district, how can it be said that it is the proviso which contains the unconstitutional feature? The proviso establishes nothing, enacts nothing: It is merely a total or partial negation of what is contained in the earlier part of the section. If we were to strike out the proviso, we should be giving to the former part of the section a meaning that the legislature has in the same breath declared it was not to have—manifestly, we should be exercising the functions of a legislature, not of a court. And if we should attempt to eliminate any portion of the section, by what process of reasoning could we come to the conclusion that the legislature considered the second proviso—the negative part of the section—less important than the affirmative portion? The proviso has a wider scope than all that precedes it, since it saves from the operation of the enacting clauses all school districts existing *de facto* at the passage of the act—that is to say, the entire territory of the state. If, therefore, any part of section 33 can be treated as comparatively insignificant, it would be the enacting clauses, and this would nullify the entire section.

Were this done, we should still have the *de facto* school districts as they stood at the passage of the act, some of them coterminous with the bounds of cities, townships, incorporated towns or boroughs, and a remaining group not coterminous with any municipality, being either made up of a portion of one municipality, or portions of two or more municipalities, or comprising the whole of one municipality and a portion of another. Then we find article 6 prescribing a code for city school districts, article 7 a code for

township, incorporated town and borough school districts, and section 244 applying especially to those districts which comprise a municipality and a portion of an adjoining municipality, so far as the selection of members of the board of education and the ordering and raising of school moneys are concerned. The very presence of section 244 in this act shows that the provisions of articles 6 and 7 were not intended to apply to composite districts. If, therefore, we could even eliminate section 244 as unconstitutional, it would leave the districts therein described out of the act, unless we could give to the other portions of the act a meaning that the legislature did not ascribe to them. Nor is the matter much bettered by the declaration in section 250—"that all school districts shall hereafter be governed solely by the provisions of this act"—even if we could ignore the second proviso, which saves the provisions of any general act theretofore accepted by vote of the people in any city or school district. Supposing a district to be made up in part of city territory and in part of township territory, by what provision of the act is it to be governed—is it by article 6, which applies to city school districts, or by article 7, which applies to township school districts? It is impossible to ascribe to the legislature such an intent; equally impossible to suppose that they contemplated that one set of regulations should apply to one portion of the school district and another set to the remaining portion.

Our attention is called to a supplement, approved March 2d, 1903 (*Pamph. L., p. 22*), by which sections 244 and 250 are amended. Under *Allison v. Corker,* 38 *Vroom* 596, the amendments, so far as they go, may relieve the act of unconstitutionality. This could have no effect upon the present decision, however, for this case arose before the passage of the supplement. The effect of the supplement is to strike out the second proviso of section 250, and thereby to eliminate one feature which seems to contribute to render the act unconstitutional. But section 244, as amended, while conferring upon the board of education in any school district, which

comprises a municipality and a portion of an adjoining municipality or municipalities, the same powers and duties provided in article 7 of the act of 1902, still retains that feature which perpetuates the former method of selecting the boards of education and of raising money for the school support. Little seems to be gained in the direction of generality by subjecting composite districts to the provisions of article 7, for the result is, in the case of a school district comprising a city and a portion of an adjoining township, that the district would be governed by the township code, although the greater part of its territory might be within the city.

For these reasons the judgment of the Supreme Court must be reversed and the proceedings under review be set aside, with costs.

In the determination of this case, the following questions were submitted to the vote of the court:

*First.* Is legislation which provides one method for the management and support of free public schools in cities and another and a different method for all other municipalities prohibited by article 4, section 7, paragraph 9, of the constitution, which forbids the passage of private, local or special laws providing for the management and support of free public schools?

*Yes*—THE CHANCELLOR, PITNEY, BOGERT, VREDENBURGH, VROOM. 5.

*No*—THE CHIEF JUSTICE, VAN SYCKEL, FORT, HENDRICKSON, GREEN, GRAY. 6.

*Second.* Do the provisions of the act of 1902, entitled "An act to establish a system of public instruction," which except certain school districts from the two general classes created by the act and impose divergent rules and regulations in respect of school management and support upon those excepted districts, render the act unconstitutional?

*Yes*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, FORT, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY.    11.

*No*—None.

*Third.* Shall the judgment of the Supreme Court be affirmed?

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, FORT, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY.    11.