JOHN CARLING ET AL., PROSECUTORS, v. THE MAYOR AND ALDERMEN OF JERSEY CITY ET AL.

Argued February 23, 1904—Decided June 13, 1904.

1. When municipal corporations are acting within the power and discretion vested in them by the legislature, in the absence of fraud the courts cannot interfere unless it appear that the power or discretion is being manifestly abused to the injury or oppression of the citizen.

2. Ministerial agents or officers of a municipal corporation employed *durante bene placito* are removable at the will of the municipality, and the duties, terms and compensation of such employment may, with the consent of such officer, be lawfully changed or altered by the municipality at any time, so long as such municipal action is taken in good faith and in the exercise of reasonable discretion and judgment.

On *certiorari.*

Before Justices HENDRICKSON and PITNEY.

For the prosecutors, *Bedle, Edwards & Thompson.*

For the defendant the Mayor and Aldermen of Jersey City, *Robert Carey.*

For the defendant John T. Rowland, Jr., *John J. Mulvaney.*

The opinion of the court was delivered by

HENDRICKSON, J. This writ brings up for review certain resolutions adopted by the board of education of the city of Jersey City and the board of finance of the city, namely, a resolution adopted by said board of education on the 15th day of May, 1903, in regard to the employment of an architect to draw plans for a new high school, and a resolution adopted by the board of finance on the 20th day of May, 1903, providing for the appropriation of money for the purpose of the employment of an architect to draw plans for such building; and a further resolution of the board of education, on the 23d day of May, 1903, purporting to employ one John T. Rowland, Jr., to prepare the plans and specifications for the same. The proceedings in question purport to be based upon the authority of an act of the legislature approved March 26th, 1903. *Pamph. L., ch.* 74, *p.* 111. Admittedly, the principal object of the attack is to set aside the resolution of the board of education of Jersey City, passed May 23d, 1903, appointing John T. Rowland, Jr., architect of the new high school about to be erected and fixing his compensation at two and one-half per cent. on the cost of the structure, which it is estimated will amount to $400,000.

The first ground of the attack is that by a previous resolution, passed in October, 1900, Mr. Rowland was appointed supervising architect of the board, at an annual salary of $3,000; that his duties as then defined by a rule of the board were to prepare plans and specifications for the new school buildings and the furniture thereof, &c.; to supervise the work of construction; to inspect all the schools of the city; to make recommendations as to their repair and renovation; to prepare plans and specifications for such repairs when necessary, and to supervise all repairs, &c.; that the services embraced under his new employment as architect were already included in the duties of his salaried position, and that therefore the proposition to add to his salary a contract for further compensation amounting to $10,000, as it is estimated, is without the lawful authority of the board and its

consummation would work fraud upon the taxpayers. But the evidence shows that at the time the defendant Rowland was appointed at a salary (1900) and for a long time previous, the city had limited its appropriation for new school buildings to $62,000 per year, derived from the excise fees, one-fourth of which were, by the charter of 1889, devoted to that purpose, and the buildings were confined to primary and grammar school building; that a new high school building was not in contemplation, and did not come within the fair and reasonable scope of the duties of the salaried position, as defined by the board in its rule.

It must here be stated, as preliminary to this discussion, that when municipal corporations are acting within the power and discretion vested in them by the legislature, the courts cannot interfere unless fraud is shown or the power of discretion is being manifestly abused, to the injury or oppression of the citizen. *Kraft* v. *Board of Education*, 38 *Vroom* 512, where cases are cited. The case now before us shows that two of the prosecutors are members of the Hudson county society of architects, and that the defendant Rowland is not a member; and that the action of these two of the prosecutors grows out of opposition to Rowland because he accepted the contract as architect of the new high school at a commission of less than five per cent. upon the total cost, which is the standard charge of the society. The president of this society, an architect of good reputation in Jersey City, who was also an applicant for the position, testified that five per cent. would be a fair charge for the work; that he had been a candidate for the position at that rate of compensation, and that his expenses would have been, if he had taken the contract, $10,000. One of the prosecutors testified that he was a member of the local architects' association; that he would have accepted the appointment of architect of the new high school, but not at a compensation of two and one-half per cent.; that his rate would have been five per cent., because he thought the work was worth that. It is made entirely clear by the evidence that the proposed new high school

building was not within the contemplation of the parties when the defendant was employed at a salary in 1900, and that the contract with the defendant to supervise the new high school at the compensation named was below the usual rate of compensation exacted by architects for such services.

But it is urged that under the terms of his salaried employment in 1900 the defendant must have performed the services required upon the new high school building, and that the action of the board in amending the terms of the employment by limiting it to primary and grammar schools was a fraud upon the taxpayers. The defendant was only a ministerial agent or officer of the board employed *durante bene placito,* and his employment could have been terminated at any time at the pleasure of the municipality. *Kurley* v. *Plainfield,* 12 *Vroom* 343. It follows that a change in the terms of the employment was within the lawful powers of the board. This being the situation, under the rule already stated, if the action of the board was taken *bona fide* and in the exercise of its reasonable discretion and judgment, that action is not open to judicial cognizance. *Oakley* v. *Atlantic City,* 34 *Id.* 127. We do not find, from the evidence, the presence of fraud or bad faith in the proceedings in question, nor that there has been any palpable abuse of discretion in the action of the board of education now under review.

Another reason urged for our intervention is that under section 1 of the act of 1903, before the board of finance could lawfully authorize the issue of bonds to raise money for the purposes aforesaid, including the pay of the architect, the board of education must have decided that it was necessary to erect such high school, or that it intended to erect such high school. The pertinent part of the resolution on that subject is "that this board hereby decides that it is necessary to raise money for the purchase of land for a new high school and for the purpose of employing an architect to draw plans for said high school and to supervise the erection thereof," &c. The statute enacts that the board shall "decide that it is necessary to raise money for purchasing or taking and con-

demning lands for school purposes or for erecting  *  *  *
a school-house or school-houses." It is argued that the
fault in the resolution is that the statute does not authorize
such raising of money for the purpose of erecting a high
school. It is true that a high school is not expressly men-
tioned, but we think it is fairly included in the terms "for
school purposes" and "school-house or school-houses."

The next ground urged for setting aside the proceedings is
that the act of 1903 is special and unconstitutional; that
by the last proviso to section 1 the act does not apply to all
the municipalities of the state, citing *Lowthorp* v. *Trenton,*
*33 Vroom* 795. But a reading of the proviso satisfies us that
its language does not have the effect attributed to it. The
act itself is general, applying to all "the municipalities or
school districts in this state." The act provides for only two
methods of raising money for the purposes of the act—one by
a tax levy, the other by the issuance of "school bonds." The
proviso is that if the charter of a municipality shall limit
the amount of its indebtedness or by its terms prevent the
carrying out of the provisions of the act, the same shall be
hereafter held not to apply to the issuing of bonds under this
act. The plain effect of this is not to limit the application
of this act, but rather to remove any special provision in
certain municipalities that might interfere with its general
application.

We have looked at the other reasons suggested for the
setting aside of the proceedings, but we think they are with-
out merit. The result is that the resolutions and proceedings
under review are affirmed and the writ dismissed, with costs.