JACOB S. JOHNSON, PLAINTIFF IN ERROR, v. THE STATE OF NEW JERSEY, DEFENDANT IN ERROR.

1. When the constitution prescribes the manner in which an officer shall be appointed or elected, the constitutional prescription is exclusive, and it is not competent for the legislature to provide any other mode of obtaining or holding the office.

2. When the constitution has conferred upon the governor the prerogative of appointing, with the advice and consent of the senate, judges of the Court of Common Pleas, it is not competent for the legislature, by a subterfuge, to divert this prerogative to another source. *Schalk* v. *Wrightson*, 29 *Vroom* 50, approved.

3. The same statute may be in part constitutional and in part unconstitutional, and if the parts are wholly independent of each other, that which is constitutional may stand and that which is unconstitutional will be rejected; but if the different parts of the act are so intimately connected with and dependent upon each other as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not have passed the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent upon each other must fail.

4. From the title of the act of June 13th, 1895 (*Pamph. L.*, *p.* 807), entitled "An act to abolish the Inferior Courts of Common Pleas, Courts of Oyer and Terminer and General Jail Delivery and Courts of General Quarter Sessions of the Peace, and to establish in their place a County Court in each of the counties of this state, and to provide for and define the jurisdiction, powers and duties of such County Courts," as well as the body of the act, it is obvious that it was the legislative purpose to abolish the old courts and substitute the new court in their place. The legislative scheme, in its main feature— that is, the extinguishment of the old courts—having failed, the other part is not separable and must fail also.

5. Upon the trial of a colored man, the absence of negroes from the panel of jurors is not error in the absence of proof that this exclusion was done designedly or that such persons were omitted except in the same way that white citizens not selected were omitted.

6. The decision of the trial court approving the conduct of the sheriff in the selection of jurors is not subject to review. *Patterson* v. *State*, 19 *Vroom* 382, followed.

7. Section 9 of the act concerning juries (*Rev.*, *p.* 526) makes it the duty of the sheriff to deliver a list of the jurors by him summoned for service at such term, certified by him to be a true list, to the clerk of such court, who shall thereupon file the said list and forthwith lay the same before the said court, and provides that no person shall serve as

a juror whose name is not contained in said list, if objection be made before such person is sworn or affirmed. *Held*—

1. That these provisions are directory merely and will not invalidate the selection and return of jurors, unless it affirmatively appears that injury was done.

2. The sheriff was under no duty to deliver this list of jurors before the commencement of the term, the language of the section being "as soon as may be after the commencement of the term."

3. The sheriff's failure to comply with this statutory requirement was a mere irregularity which could in no wise have prejudiced the defendant in maintaining his defence upon the merits; and the statute forbids the reversal of a judgment upon an indictment for any imperfection, omission, defect in or lack of form, or for any error, except such as shall or may have prejudiced the defendant in maintaining his defence upon the merits. *Gen. Stat., p.* 1138, ¿ 89.

On error to the Supreme Court. For opinion of the Supreme Court, see *ante p.* 271.

For the plaintiff in error, *William V. Steele* and *James J. Meehan.*

For the defendant in error, *Nelson Y. Dungan* and *James J. Bergen.*

The opinion of the court was delivered by

DEPUE, J. The plaintiff in error was indicted for murder for causing the death of Sarah Ann Rogers. The indictment was found in the Court of Oyer and Terminer of the county of Somerset, at the term of September, 1895. On the traverse of this indictment the prosecutor was tried before said court and convicted of murder in the first degree and sentenced to death.

The writ of error places under review the following assignments of error:

*First.* That the court before which the defendant below was tried and convicted had no legal existence, having been abolished by the act of 1895, commonly called the County Court act.

By an act of the legislature passed June 13th, 1895, the

Inferior Courts of Common Pleas, the Courts of Oyer and Terminer and Courts of Quarter Sessions of the several counties of the state were abolished, and a County Court established in each of the counties of the state, to be known and designated as the (name of county) County Court, with the same jurisdiction, civil and criminal, as the courts which were abolished previously possessed. The act provided for one judge for each county, to be elected by the qualified voters of the county. It further provided that any County Court might be held by any justice of the Supreme Court or by any judge of a County Court, or by such justice and judge sitting together, with a proviso that a justice of the Supreme Court should preside in the trial of indictments for crimes punishable by death. *Pamph. L.* 1895, *p.* 807.

Under the judicial system in existence prior to the act of 1895, a judge of the Court of Common Pleas, as such a judge, sat as an associate in the Oyer and Terminer, and as a judge of the Court of Common Pleas he sat in the Quarter Sessions. These judges were appointed and commissioned as judges of the Court of Common Pleas. The appointment of a judge as judge of the Court of Oyer and Terminer or Court of Quarter Sessions was a thing unknown. The judges of the Court of Common Pleas sat in the Oyer as judges of the Court of Common Pleas, just as the justices of the Supreme Court presided in that court, not as a judge of the Oyer and Terminer, but in virtue of his commission as a justice of the Supreme Court.

By the constitution, as amended in 1875, the prerogative of appointing the judges of the Court of Common Pleas was conferred upon the governor, with the advice and consent of the senate. The act of 1895 did not create a new court with a new jurisdiction. It simply created a court by a new name and invested it with all the jurisdiction and functions exercised by the old court, and took from the executive the power to appoint its judges and delegated it to a popular election.

The power of the legislature to alter or abolish the Court of Common Pleas as the public good may require is indis-

putable.  *Kenny* v. *Hudspeth, ante p.* 320 ; *S. C. on error,.
ante p.* 504.    This power has been vindicated to the extent
of permitting the legislature to vacate the commissions of
those judges who were in. office when the legislature inter-
vened.

But the capacity of the legislature to alter or abolish is not
involved at this time. . A court consists in its jurisdiction·
and functions, and not its title or name.    The legislature, in·
the act of 1895, carefully preserved the jurisdiction and func-
tions of the old court in everything which is the essential
quality of a court, gave the tribunal a new name and trans-·
.ferred the selection of the incumbents of the judicial office·
from the executive to a popular election.    The Court of
Common Pleas, as a court, and all its concomitants, such as
the right of its judges to sit in the Oyer and Sessions, were
retained by the act of 1895 precisely as they existed before.
All that was done was a change of name and the mode of
selecting the judges who were to officiate in the court.    The·
constitution having conferred upon the governor the preroga-
tive of appointing, with the advice and consent of the senate,.
these judicial officers, it was not competent for the legislature,.
by a subterfuge, to divert this prerogative right to another
source.    When the constitution prescribes the manner in which
an officer shall be. appointed or elected, the constitutional pre-
scription is exclusive, and it is not competent for the legisla-
ture to provide any other mode of obtaining or holding the
office.    *State* v. *Wrightson,* 27  *Vroom* 127, 141.    That is pre-
cisely what the act of 1895 purported to accomplish—to leave
these courts with a change of name and the executive shorn
of his prerogative of appointment.    It was on this ground
that the Supreme Court, in *Schalk* v. *Wrightson,* 29 *Id.* 50,.
decided that the act of 1895 was unconstitutional and void.
That decision is approved by this court.

It is contended by counsel that although the act of 1895 is.
unconstitutional with respect to the judges of the Court of
Common Pleas, it may be sustained with respect to the judges
of the Oyer and Terminer and Court of Quarter Sessions,

these courts being without any constitutional protection or regulation and the selection of the judges being wholly a matter of legislative discretion. The theory on which the argument proceeded was that the statute consisted of two parts, one of which, being unconstitutional, might be rejected and the other retained.

It is undoubtedly elementary law that the same statute may be in part constitutional and in part unconstitutional, and if the parts are wholly independent of each other, that which is constitutional may stand and that which is unconstitutional will be rejected; but if the different parts of the act are so intimately connected with and dependent upon each other as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not have passed the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent upon each other must fail. As was said by Mr. Justice Matthews, in *Poindexter* v. *Greenhow*, 114 *U. S.* 270, 304: "It is undoubtedly true that there may be cases where one part of a statute may be enforced as constitutional and another be declared inoperative and void, because unconstitutional; but these are cases where the parts are so distinctly separable that each can stand alone, and where the court is able to see and to declare that the intention of the legislature was that the part pronounced valid should be enforceable, even though the other part should fail. To hold otherwise would be to substitute for the law intended by the legislature one which they may never have been willing by itself to enact." *Spraigue* v. *Thompson*, 118 *Id.* 91; *Pollock* v. *Farmers' Loan and Trust Co.*, 158 *Id.* 601, 635.

In *Warren* v. *Mayor of Charlestown*, 2 *Gray* 84, it was held that "when the parts of a statute are so mutually connected and dependent, as conditions, considerations or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not pass the residue independently, if some parts are unconstitutional and void,

all the provisions which are thus dependent, conditional or connected must fail with them."

This rule, with regard to an unconstitutional feature in a statute, is elementary, and it applies in an eminent degree to the legislation in question. The judges who, under our judicial system prior to the act of 1895, sat as associates in the Oyer and Terminer and as judges in the Court of Quarter Sessions, were appointed and commissioned as judges of the Court of Common Pleas; and it is inconceivable that it was the legislative scheme, by the act of 1895, to leave the Court of Common Pleas in existence and its judges in commission and create a new judicial officer, known as a County Court judge, to hold the Courts of Quarter Sessions and to sit as an associate to the Supreme Court justice in the Court of Oyer and Terminer. That such was not the purpose of the legislature is demonstrated by the title of the act, which is as follows: "An act to abolish the Inferior Courts of Common Pleas, Courts of Oyer and Terminer and General Jail Delivery and Courts of General Quarter Sessions of the Peace, to establish in their places a County Court in each of the counties of this state, and to provide for and define the jurisdiction, powers and duties of such County Courts." It is obvious from the title of the act, as well as its body, that it was the legislative purpose to abolish the old courts and substitute the new court in their place. The legislative scheme, in its main feature—that is, the extinguishment of the old courts—having failed, the other part, which is not separable, must fail also.

The *second* ground assigned for reversal is the exclusion of negroes from jury duty, the prisoner being a colored man. There is no proof in the case to show that this exclusion was done designedly or that such persons were omitted from the panel of jurors except in the same way that white citizens not selected were omitted. The conduct of the sheriff in the selection of the jurors was approved by the court below and its decision is not subject to review. *Patterson* v. *State*, 19 *Vroom* 382.

*Third.* That the sheriff did not deliver a list of the jurors actually summoned to the clerk, pursuant to section 9 of the act concerning juries. *Rev., p.* 526. By that section it is made the duty of the sheriff to deliver a list of the jurors by him summoned for service at such term, certified by him to be a true list, to the clerk of such court, who shall thereupon file the said list and forthwith lay the same before the said court, and no person shall serve as a juror whose name is not contained in said list, if objection be made before such person is sworn or affirmed.

The jury for the general panel was drawn in the presence of the court, and the list of names so drawn, with the proper certificate attached, was filed with the county clerk and a copy thereof retained by the sheriff. The persons so selected were by the sheriff duly summoned and all were in attendance on the day fixed for the trial, objection having been made to the panel because the sheriff had not filed with the county clerk a list containing the names of the jurors summoned. The challenge was overruled, and the sheriff advised by the court to file the list, as he did on that day, as appears by the certificate of the clerk. From the jurors thus summoned were selected forty-eight persons, as required by law, a list of whom was served on the defendant, and from this list was drawn, in the usual way, the jury by whom the case was tried and determined. The claim by the prisoner is that although the jury were properly chosen and duly summoned, they could not try the defendant because of the fact that the jury that had been summoned was not certified to and filed by the sheriff with the county clerk.

In disposing of this assignment of error it is sufficient to say that the general panel of jurors in this case was drawn by the sheriff, before the Court of Common Pleas, pursuant to the fifth section of the act of April 21st, 1876 (*Gen. Stat., p.* 1854, ¶ 50), and that the list of the general panel was certified to by the judges of the said court, pursuant to the statute, as jurors selected, in all respects, according to the provisions of the statute, a copy of which list was filed by the clerk in

his office and another copy delivered to the sheriff. The statute just referred to contains the only prescription of the mode in which the general panel shall be drawn. The other provisions of the statute are directory merely and will not invalidate the selection and return of jurors, unless it affirmatively appears that injury was done. *Gardner* v. *State,* 26 *Vroom* 17; *Poulson* v. *Union National Bank,* 11 *Id.* 563. The prisoner's counsel was informed by the list on file in the clerk's office of the names of the persons upon the general panel, and at the opening of court every juror whose name appeared on the general panel was present and answered to his name. It may also be said that the sheriff was under no duty to deliver this list of jurors before the commencement of the term, the language of the section being "as soon as may be after the commencement of the term," and no application was made to postpone the trial of the case until such a certificate might be made. The sheriff's failure to comply with this statutory requirement was a mere irregularity which could in no wise have prejudiced the defendant in maintaining his defence upon the merits; and the statute forbids the reversal of a judgment upon an indictment for any imperfection, omission, defect in or lack of form, or for any error, except such as shall or may have prejudiced the defendant in maintaining his defence upon the merits. *Gen. Stat., p.* 1138, § 89.

The *fourth* assignment of error relates to the judicial action of the trial court with respect to the introduction of certain evidence. The case was one depending wholly on circumstantial evidence. Certain witnesses testified to having seen certain footprints of a peculiar character in the dirt and soil near to the body of the woman who had been murdered, and for the purpose of showing that such footprints had been made by this defendant, the state produced the boots that were worn by the prisoner on the night in question. Certain impressions in sand made, in the presence of the jury, by the boots just mentioned, were exhibited to the jury against ob-

jection taken by counsel of the defendant. This constitutes this assignment of error.

The testimony of the witnesses with regard to the appearance of these footprints was undoubtedly competent. Such testimony involved in no sense the knowledge of an expert; and the exhibition of the boots worn by the defendant on the night in question, and the impress in the sand by way of illustration with them, were also competent. We agree with the opinion of the Supreme Court on this subject.

The counsel of the prisoner also contends that on a review of the whole record, pursuant to the act of May 9th, 1894 (*Gen. Stat., p.* 1154), the conviction should be set aside and a new trial ordered. We have examined this case carefully, and have reached the conclusion that the plaintiff in error has not suffered manifest injury, either in the rejection of testimony, or in the charge to the jury, or in the denial of any discretionary matter by the court, or upon the evidence adduced at the trial. We think that this case was fairly tried and that the evidence justified the jury in their verdict.

Finding no error in the record or proceedings, the judgment should be affirmed.

DIXON, J. (dissenting). In January, 1896, the plaintiff in error was tried and convicted of murder of the first degree, before a tribunal styled in the record the Court of Oyer and Terminer of the county of Somerset, held by a justice of the Supreme Court and two others styled judges of the Court of Common Pleas of said county. At that time the act of June 13th, 1895 (*Pamph. L., p.* 807), which purports to abolish the Courts of Oyer and Terminer and of Common Pleas after the first Monday in December, 1895, stood upon the statute-book unrepealed.

For the reasons set forth by Mr. Justice Magie in his dissenting opinion in *Schalk* v. *Wrightson*, 29 *Vroom* 50, I think that act was a valid exercise of the constitutional power of the legislature to abolish the inferior courts of the state, and, therefore, that the tribunal which tried and convicted the

plaintiff had no lawful existence, and consequently no jurisdiction.

That the act of April 9th, 1896 (*Pamph. L., p.* 236), could not validate such proceedings is sufficiently maintained by the opinion of Chief Justice Beasley in *Maxwell* v. *Goetschius,* 11 *Vroom* 383.

The judgment should be reversed.

*For affirmance*—THE CHANCELLOR, DEPUE, GUMMERE, VAN SYCKEL, BARKALOW, BOGERT, DAYTON, HENDRICKSON, KRUEGER, NIXON.    10.

*For reversal*—DIXON.    1.