PUERTO RICO TOBACCO CORPORATION, Plaintiff and Appellee, *v.* RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 8602. Argued June 9, 1943.—Decided January 18, 1944.

*M. Rodríguez Ramos, Acting Attorney General, (José Rafael Gelpí, Deputy Attorney General, on the brief, and M. Velázquez Flores, Deputy Attorney General, for appellant. Clemente Ruiz Nazario for appellee.*

Mr. Acting Chief Justice Travieso delivered the opinion of the court.

The plaintiff, Puerto Rico Tobacco Corporation, is engaged in the manufacture and sale of cigarettes in Puerto Rico.

On June 18, 1939, there was approved Act No. 22 of the Legislature of Puerto Rico, whereby the taxes on real and personal property owed by those taxpayers whose tax indebtedness, up to June 30, 1938, did not exceed the sum of $400 were remitted; and every tax indebtedness exceeding $400 was reduced by that sum. The Treasurer of Puerto Rico was directed to cancel the tax receipts for the fiscal year 1937–38 and preceding years, and he was likewise directed to dissolve all attachments levied to secure the collection of said taxes. It was further provided that the properties sold at auction and awarded to the People of Puerto Rico should be returned to their former owners. Such remission was conditioned upon the payment by the taxpayer to the Treasurer, on or before December 31, 1939, of the taxes pertaining to the fiscal year 1938–39 and the first semester of the fiscal year 1939–40, and, also, of the total indebtedness due on June 30, 1938, exclusive of the sum of $400.

By §6 of said Act, as amended by Act No. 49 of May 6, 1940, the Treasurer of Puerto Rico was directed to contract a loan with a natural or artificial person for the sum of two million two hundred and fifty thousand (2,250,000) dollars, which would be used to reimburse to the municipalities and to the University of Puerto Rico the amounts which they should fail to receive as a result of the remission authorized by the Act. The principal amount and interest on said

loan were to be paid out of the proceeds of an additional internal revenue tax or impost of "fifty (50) cents on each thousand cigarettes brought into or manufactured, sold, or consumed in Puerto Rico." The revenues derived from that tax would be used to establish therewith a special fund which must be applied to reimbursing to the municipalities and to the University of Puerto Rico the corresponding amounts, and the balance of such proceeds was to be used to increase the "Hospital Charities Fund" created for the support and equipment of the district hospitals.

The plaintiff corporation alleges that, pursuant to the provisions of the cited Act, the defendant Treasurer demanded from it that it should purchase and affix to the cigarettes manufactured or sold by it the corresponding internal revenue stamps; that in view of the threat of being subjected to the criminal prosecutions and penalties provided by the Internal Revenue Law, the plaintiff purchased and paid under protest internal revenue stamps to the total amount of $219,998.10, during the period from October 29, 1940 to July 14, 1941. That out of the total sum thus paid by the plaintiff, $31,428.30 represents the stamps canceled in payment of the additional tax imposed by virtue of the aforesaid Act No. 22 of 1939, on 62,856,600 cigarettes manufactured by the plaintiff.

The plaintiff maintains that the tax thus levied and collected by the Treasurer is illegal and void, because it has been imposed for a purpose contrary to law which is "*ultra vires*" or beyond the functions and powers of the Legislature, and because it is contrary to the Organic Act of Puerto Rico and to the Constitution of the United States. The specific grounds of nullity alleged are as follows:

A. Violation of the first paragraph, §2 of the Organic Act and of the Fourteenth Amendment to the Constitution, in that it establishes a discrimination in favor of the delinquent taxpayers and against taxpayers who have timely paid

their taxes, thus denying to the latter the equal protection of the laws.

B. Violation of the twenty-second paragraph of said §2 of the Organic Act which provides that "the rule of taxation in Puerto Rico shall be uniform."

C. Violation of §3 of the Organic Act which only authorizes the imposition of internal revenue taxes "for the purposes of the insular and municipal governments, respectively," since the tax in controversy has not been imposed for any legitimate purpose of said governments, but only for the illegal benefit of the delinquent taxpayers.

D. The plaintiff is deprived of its property without due process of law and is being denied the equal protection of the laws by being compelled to give up its funds for the benefit and unjust enrichment of the delinquent taxpayers.

E. The loan, the payment of which constituted the special purpose of the tax has not yet been contracted nor can it ever be contracted by reason of the nullity and illegality of the Act which authorizes the same.

Subsequent to the filing of the original complaint, the plaintiff filed seventeen supplemental complaints in which it claimed the return of other amounts paid under protest on account of the same excise. The total sum claimed amounts to $93,366.44.

There being no dispute as to the facts, the case was submitted upon a stipulation. On June 29, 1942, the lower court rendered judgment in favor of the plaintiff for the sum of $59,524.50 with interest thereon at the rate of 6 per cent per annum; and on November 4, 1942, it rendered a supplemental judgment for the sum of $33,841.75, which is the total sum claimed in the supplemental complaints numbered from the tenth to the seventeenth inclusive, also with interest thereon at the rate of 6 per cent per annum. Feeling aggrieved by those judgments, the defendant Treasurer took the present appeal.

The appellant, in his brief, for the first time has raised as a "preliminary question" the following:

After the two judgments appealed from had been rendered and notified to the Treasurer, the Legislature passed Act No. 22 of December 3, 1942, to become effective on March 3, 1943. The provisions of said Act, which we regard as essential and which are pertinent to the case before us, are as follows:

1. It imposes an additional internal revenue tax of fifty cents on each thousand cigarettes imported, manufactured, sold, used, or consumed in Puerto Rico.

2. The funds collected through said tax shall be covered into the general funds of the Insular Treasury.

3. Act No. 22 of June 18, 1939, as amended by Act No. 149 of May 6, 1940, which is the Act declared unconstitutional by the judgments involved in this appeal, is repealed.

4. The effects and provisions of the new law are made retroactive to June 18, 1939, without any limitation. From that date the Treasurer may collect the additional tax.

5. The Treasurer shall not return any sum collected by virtue of Act No. 22 of June 18, 1939, as amended by Act No. 149 of May 6, 1940, and shall apply the amounts thus collected to the payment of the tax imposed by the new act.

Without citing any authority in support of his contention, the appellant maintains that the repeal of the Act which gave rise to this suit and the retroactive effect which has been given to the new law, render unavailing the complaint in the action for the recovery of taxes paid and that any judgment which might be entered in favor of the complaint would be academic, since it would be based on a nonexistent statute and could not be enforced. He further says that the Treasurer could not comply with the mandate of this court, because the new act directs him to refrain from returning the sums collected and commands him to apply said sums to the payment of the tax imposed by that Act.

Arguing in opposition to the preliminary question thus raised, the plaintiff-appellee maintains:

1. That Act No. 22 of 1942 is not and can not be considered as a curative statute nor as a validation or ratification of acts executed under another prior statute, (a) because the text of said Act fails to provide, either expressly or impliedly, that its purpose is to correct, cure, reform, validate, rectify, clarify, or ratify Act No. 22 of 1939; (b) because the new act expressly repeals the prior act as of the same date on which the latter was approved, and it is inconceivable that a statute which has ceased to exist could be validated; and (c) because, as the Legislature was not empowered to pass Act No. 22 of 1939, in its original form, it is not empowered, either, to validate or ratify the same a posteriori.

2. That the Insular Legislature has no power to impose an excise tax on the sale or manufacture of cigarettes consummated over three and a half years prior to the passage of the Act.

3. Act No. 22 of December 3, 1942, in so far as it directs the Treasurer not to return any amounts collected by virtue of the Act which had been declared void by the judgments appealed from, affects the vested rights of the plaintiff under said judgments and constitutes an unjustified encroachment by the legislative power on the functions of the judicial power.

■ The first question which we must decide is: Assuming that Act No. 22 of 1939 is subject to the defects pointed out by the plaintiff, was the Legislature empowered to cure them and to validate the collections made under that Act by means of legislation having a retroactive effect? Let us examine the decisions cited by the appellee to support a negative answer to that question.

In *United States* v. *Heinszen & Co.*, 206 U. S. 370, 51 L. ed. 1098, the National Congress passed in 1906 an act where-

by the collection of customs duties by the Federal authorities in the Philippines prior to March 8, 1902, was legalized and ratified "as fully to all intents and purposes as if the same had by prior act of Congress been specifically authorized and directed." The Supreme Court upheld the validity of the statute, saying:

"Where an agent, without precedent authority, has exercised in the name of a principal a power which the principal had the capacity to bestow, the principal may ratify and affirm the unauthorized act, and thus retroactively give it validity when rights of third persons have not intervened, is so elementary as to need but statement. That the power of ratification as to matters within their authority may be exercised by Congress, state governments or municipal corporations, is also elementary.

" * * * , * * * *

"Indeed the contention goes further even than this, since it entirely disregards the important consideration that although the duties were illegally exacted the illegality was not the result of an inherent want of power in the United Stated to have authorized the imposition of the duties, but simply arose from the failure to delegate to the oficial the authority essential to give immediate validity to his conduct in enforcing the payment of the duties."

The decision in the *Heinszen* case is based entirely on an application of the legal maxim *"Omnis ratihabitio retrotrahitur et mandato priori acquiparatur."* The Congress could ratify and validate the imposition of duties made by order and under the authorization of the President of the United States, because Congress had the necessary inherent power to confer originally on the President the power to impose those duties. In *Rafferty* v. *Smith, Bell & Co.,* 257 U. S. 226, 66 L. ed. 208, the decision in the *Heinzen* case was confirmed, and it was held that the fact that a judgment for restitution of customs duties illegally collected had been obtained in the Supreme Court of the Philippines before the approval of the act of Congress validating such collection,

did not preclude said judgment from being reversed by the Federal Supreme Court. See *Hodges* v. *Snyder*, 261 U. S. 600.

In *Charlotte Harbor Ry.* v. *Welles*, 260 U. S. 8, 67 L. ed. 100, the Supreme Court held that the legislature of the State of Florida had power to pass an act validating the action of the County Commissioners and "legalizing and validating the assessments made for the construction of roads and bridges," and it said:

"The general and established proposition is that, what the legislature could have authorized, it can ratify if it can authorize at the time of ratification. (Citing authorities.) And the power is necessary, that government may not be defeated by ommissions or inaccuracies in the exercise of functions necessary to its administration."

If we apply to the present case the doctrine laid down by the decisions which we have just examined, we are bound to reach the conclusion that if the Legislature was not legally authorized to pass Act No. 22 of June 18, 1939, because said Act is contrary to the constitutional provisions and prohibitions, it has no authority either to ratify said Act or any action taken under it. We therefore hold that Act No. 22 of December 3, 1942, is not and can not be considered as a legal validation or ratification of the taxes collected from the plaintiff under the Act of 1939.

We have no doubt whatsoever that if the Legislature had, in 1939 and in 1942, the necessary power to pass a law having the aims and purposes of Act No. 22 of 1939, a ratification of said law in 1942, would have validated retroactively the imposition and collection of the taxes sought to be recovered by the plaintiff, even after a judgment of restitution had been rendered. See *Pillich* v. *Fitzimmons, Auditor,* 59 P.R.R. 104.

■ Conceding as we do that the Legislature has power to impose internal revenue taxes on cigarettes prospectively, that is, on those manufactured subsequent to the approval

of the Act, we now proceed to consider and decide the second question raised by the appellee: Is the Legislature empowered to impose an excise tax on cigarettes which were manufactured or sold over three and a half years before the approval of the Act?

Story, in his Commentaries on the Constitution, says: "Retrospective laws are, indeed, generally unjust; and, as has been forcibly said, neither accord with sound legislation nor with the fundamental principles of the social compact." Story, Const., §1398.

In *Shwab* v. *Doyle,* 258 U. S. 529, 66 L. ed. 747, there was involved the application of an act of Congress imposing a tax on any transfer of property made by a person within two years prior to his death. Augusta Dickel assigned her property in trust on April 21, 1915, and died on September 16, 1916. The Congressional statute was enacted on September 8, 1916. The Supreme Court held that the Government was not entitled to apply the statute retroactively to a transfer consummated before its passage.

In *Levy* v. *Wardell,* 258 U.S. 542, 66 L. ed. 758, a tax had been levied on certain transfers of shares of stock made several years before the passage of the Act of September 8, 1916. The Supreme Court decided the case in favor of the plaintiff, saying:

"At the time of the transfers there was no law of the State of California imposing any transfer or inheritance tax, nor was there a law of the United States to that effect, and all of the transfers were intended to take effect in possession and enjoyment upon their date. The act of Congress, therefore, should not be construed to be retroactive, and, if so construed, was in violation of the Constitution of the United States in that it would take the property of plaintiffs without due process of law in violation of he Fifth Amendment, and would not be, besides, a transfer tax or an indirect tax but would be a direct tax thereon in violation of Article 1, §9, subdivision 4 of the Constitution of the United States, because not laid in proper relation to census or enumeration as therein provided."

See to the same effect: *Lewellyn* v. *Frick*, 268 U. S. 238, 69 L. ed. 934; *Nichols* v. *Coolidge*, 274 U. S. 531, 71 L. ed. 1185; *Blodgett* v. *Holden*, 275 U. S. 142, 72 L. ed. 206; *Untermeyer* v. *Anderson*, 276 U. S. 440, 72 L. ed. 645; *Coolidge* v. *Long*, 282 U. S. 582, 75 L. ed. 562; *Forbes Pioneer Boat Line* v. *Board of Commissioners*, 258 U. S. 338, 66 L. ed. 647; *Danzer & Co.* v. *Gulf & Ship Island R. Co.*, 268 U. S. 633, 69 L. ed. 1126; *Coombes* v. *Getz*, 285 U. S. 434, 76 L. ed. 866.

 According to the doctrine laid down in the decisions above cited, the conclusion is unavoidable that the application of Act No. 22 of December 3, 1942, to the manufacture and sale of cigarettes consummated prior to the approval of said Act would be tantamount to depriving the plaintiff of its property without due process of law in violation of its constitutional rights. See Note, 146 A.L.R. 1011.

 Act No. 22 of December 3, 1942, is also void and unconstitutional, in so far as it directs (§4) the Treasurer of Puerto Rico to retain the sums collected by him under Act No. 22 of June 18, 1939, as amended in 1940, and to apply said sums to the payment of the taxes on sales made before the passage of the new act. The provisions of §4 are really a command to the Treasurer of Puerto Rico to ignore and refuse to respect or comply with the judgments rendered by the District Court of San Juan declaring illegal the collection of said taxes and directing the return of the sums paid under protest.

It is a doctrine firmly established by the decisions of the Federal courts and of numerous state courts that the Legislature has no power to invade the province of the judiciary by setting aside, modifying, or impairing a final judgment of the court with jurisdiction to render it. This doctrine is based on the paramount necessity of keeping intact the constitutional principle requiring the separation of the three powers into which every democratic government is divided;

for, as aptly said by Montesquieu (The Spirit of Laws, bk. II, c. VI), "when the legislative and executive powers are united in the same person, or the same body of magistrates, there can be no liberty, because apprehensions may arise, lest the same monarch or senate should enact tyrannical laws, to execute them in a tyrannical manner. Again, there is no liberty of the judiciary power if it be not separated, from the legislative and executive. Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control; for the judge would be the legislator."

In *McCullough* v. *Virginia*, 172 U. S. 102, 43 L. ed. 382, the Federal Supreme Court, in passing upon the validity of a statute enacted subsequent to the rendition of a judgment and invoked against the latter, said:

"It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases. So, properly, the Court of Appeals, in considering the question of the validity of this judgment, took no notice of the subsequent repeal of the act under which the judgment was obtained, and the inquiry in this court is not what effect the repealing act of 1894 had upon proceedings initiated thereafter, or pending at the time, but whether such a repeal divested a plaintiff in a judgment of the rights acquired by the judgment. And in that respect we have no doubt that the rights acquired by the judgment under the act of 1882 were not disturbed by a subsequent repeal of the statute."

Judge Cooley, in his work "Constitutional Limitations" (8th ed., vol. 1, p. 190 *et seq.*), deals with this interesting question as follows:

"But the legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be its exercise in the most objectionable and offensive form, since the legislature would

in effect sit as a court of review to which parties might appeal when dissatisfied with the rulings of the courts.

"As the legislature can not set aside the construction of the law already applied by the courts to actual cases, neither can it compel the courts for the future to adopt a particular construction of a law which the legislature permits to remain in force. 'To declare what the law *is, or has been* is a judicial power; to declare what the law *shall be,* is legislative. One of the fundamental principles of all our governments is, that the legislative power shall be separate from the judicial.' "

For other authorities on the same subject, see *People ex rel Lafferty* v. *Owen,* 286 Ill. 638, 122 N. E. 132; monograph in 3 A.L.R. 450; *U. S.* v. *Judge Peters,* 5 Cranch 115, 3 L. ed. 53–61; *U. S.* v. *Klein,* 80 U. S. 13 Wall, 128, 20 L. ed. 519; *Langever* v. *Miller,* (*Tex.*) 76 S.W. (2d) 1025, 96 A. L.R. 836.

Facts similar to those of the case at bar were involved in *People ex rel Leaf* v. *Orvis,* 374 Ill. 536, 132 A.L.R. 1382. The Legislature of Illinois enacted a law authorizing a bond issue and levying a tax for the payment thereof. A state court held that the bonds as well as the tax were unconstitutional and void. After the rendition of that judgment, the Legislature passed a law which attempted to validate the void statute and in addition to set aside the judgment. In holding that the new law constituted an encroachment by the legislature on the judiciary, the court said:

"It is one of the fundamental principles of our government that the legislative power shall be separate from the judicial. If the General Assembly would prescribe a different rule for the future from that which the courts enforce, it must be done by statute applicable in the future, and cannot be done by setting aside final judgments of the courts.

" * * * * * , * *

"In the case before us there has been no defect, as to procedure, in the issuance of the bonds or in the allowance of these claims, but the bonds and the claims for which they were issued were invalid and beyond the power of the school district to incur. This court so

held, and under that judgment these bonds and claims were beyond the power of the General Assembly to validate. The tax objected to here is for purpose of paying these invalid bonds.''

The case at bar presents a more forceful situation which is less defensible than the one involved in the case just cited. Here no attempt is made even to validate Act No. 22 of 1939. On the contrary, said Act was expressly repealed, leaving as the sole and evident purpose of the new law to permit the Insular Treasury to retain for itself the sums collected under a statute which had already been declared void and unconstitutional by the final judgment of a competent court.

Among the cases cited by the appellee, none is so nearly identical with the one at bar as the case of *Forbes Pioneer Boat Line* v. *Board of Comm'rs*, 258 U. S. 338, 66 L. ed. 647. There it was sought to recover tolls or charges unlawfully collected from the plaintiff by a Board which had no power to impose them. On the same day that the Supreme Court of Florida had rendered judgment sustaining the sufficiency of the complaint and remanded the case to the lower court for further proceedings, the state legislature passed an act amending prior statutes and conferring express power on the Board to charge and collect tolls for the use of canal locks. The new act provided that all tolls previously collected were validated and legalized. The Supreme Court of Florida by a judgment held that the amendatory law was valid and constitutional, and upon the case being appealed to the Federal Supreme Court, the latter reversed that judgment. From the opinion, which was delivered by Mr. Justice Holmes, we copy the following:

''Stripped of conciliatory phrases the question is whether a state legislature can take away from a private party a right to recover money that is due when the act is passed. . . .

''It is true that the doctrine of ratification has been carried somewhat beyond the point that we indicate, in regard to acts done in the name of the Government by those who assume to represent it.

(Citing authorities.) It is true also that when rights are asserted on the ground of some slight technical defect.. . . . Courts have allowed them to be defeated by subsequent legislation. . . (citing authorities.) In those cases it is suggested that the meaning simply is that constitutional principles must leave some play to the joints of the machine.

"But Courts can not go very far against the literal meaning and plain intent of a constitutional text. Defendant owed the plaintiff a definite sum of money that it had extorted from the plaintiff without right. It is hard to find any ground for saying that the promise of the law that the public force shall be at the plaintiff's disposal is less absolute than it is when the claim is for goods sold. Yet no one would say that a claim for goods sold could be abolished without compensation. It would seem from the first decision of the Court below that the transaction was not one for which payment naturally could have been expected. To say that the legislature simply was establishing the situation as both parties knew from the beginning it ought to be would be putting something of a gloss upon the facts. We must assume that the plaintiff went through the ,canal relying upon its legal rights and it is not to be deprived of them because the Legislature forgot."

The preliminary question raised by the appellant must be decided against him.

Let us consider now the two errors assigned by the appellant Treasurer.

1. Did the lower court err in holding that Act No. 22 of June 18, 1939, as amended in 1940, is unconstitutional?

No great effort is required to discover the arbitrary and unjustified discrimination which the first four Sections of said Act establish in favor of the delinquent taxpayers and against those who paid timely and fully the taxes assessed on their properties. To the former, to the delinquent ones, to those who failed to pay either because they did not wish to or could not pay, a gift of $400 was made without even investigating the cause of their delinquency. And thus, under an avowed public policy of conserving for every man his land, his commerce, or his industry, of promoting agriculture, and of decreasing unemployment, it was made pos-

sible for many taxpayers, who could have paid their taxes in time without any effort but failed to pay them due to their own negligence or to that of the government in not pressing them for such payment, to receive a donation of $400 as a reward for their delinquency. To the paying taxpayers, to the ones who paid in time, the law granted nothing. And thus, under the same avowed public policy, many taxpayers, who in order to pay in time and to save their homes sacrificed their commerce and industry or their land, were denied the same protection which the assailed law gave to the delinquent distressed taxpayers. If the statute had made the remission applicable to all the taxpayers, to the delinquent as well as to the paying taxpayers, or at least to those who failed to pay because they were unable to do so and to those who in order to pay had to incur debts or sacrifices, the statute could be defended at least from the standpoint of a wholesome and humane administrative policy. The law, such as it has been drafted and applied, is indefensible from every standpoint.

Plaintiff's contention that the law complained of is in open conflict with the provisions of the first paragraph of §2 of the Organic Act and of the Fourteenth Amendment to the Federal Constitution, which guarantee to every person the equal protection of the laws, is supported by numerous decisions construing the Fourteenth Amendment, which contains the same prohibition set forth in our Organic Act. In most jurisdictions in which this question has been raised it has been held that the remission, release, or compromise of a claim for taxes when authorized by the Legislature, violates said constitutional provision. *State ex rel. Matteson* v. *Luecke,* 99 A.L.R. 1053; *Wilson* v. *Sup. of Sutter Co.,* 47 Cal. 91.

In *Simpson* v. *Warren,* (Fla. 1932) 143 So. 602, it was said:

"Where a statute which provides for the collection of a particular tax is valid, and taxes from some have been collected under it, the Legislature is without power to unconstitutionally discriminate against, and deny the equal protection of the laws to, the class of taxpayers who have already paid such tax while the statute was in force, by arbitrarily remitting or wiping out by repeal of the statute or otherwise the liability of those who have by their delinquency evaded or postponed payment. . ."

In the case of *Matteson* v. *Luecke, supra,* decided by the Supreme Court of Minnesota, the question involved was the constitutionality of a statute which granted to delinquent taxpayers the right to satisfy their debts in full by the payment of a fraction of the amount thereof. This is what the court said:

"It is clear to us that the statute being considered is violative of this provision of our Constitution. The classification of subjects here attempted is unreasonable and fanciful. Realty owners are divided into two classes: those who pay taxes promptly and those who do not. The latter pay a smaller amount than the former. No reasonable basis founded on essential differences of nature or circumstances suggests itself for this classification. In determining the reasonableness of a classification set up by the Legislature, the court will not concern itself with the question of public policy involved and the expediency of the measure. (Citing authorities.) Yet, in determining the reasonableness of a classification, a legitimate object for the court's consideration is the practical effect the classification is bound to have on business and organized society generally. In this connection it readily can be seen that the statute here concerned encourages and fosters tax delinquencies in the state. Taxpayers are prompted to allow taxes to become delinquent in order thereafter to be able to satisfy them in full by the payment of a fraction of the amount originally assessed. Such result is not desirable, and demonstrates the unreasonableness of the classification."

See to the same effect *Richey* v. *Wells,* (Fla. 1936) 166 So. 817; *State* v. *Hunt,* (Ohio 1937) 9 N. E. (2d) 676; *Steinacher* v. *Swanson,* (Neb. 1936) 268 N. W. 317; and *State* v. *Fischl,* (Mont. 1933) 20 Pac. (2d) 1057.

We agree with the plaintiff and with the lower court that the assailed law transcends the limits of the provisions of the Organic Act and of the Federal Constitution which guarantee to every person the equal protection of the laws, and that it also violates the provisions of the Organic Act which require uniformity in the imposition of taxes.

■ We also consider as well-founded the ruling of the lower court that the Act in question must be declared void and unconstitutional in its entirety, and that it is not possible to hold that it is invalid as to the remission of the taxes and valid as to the imposition of the excise on the manufacture and sale of cigarettes. When the various provisions of a statute are intimately connected with and dependent upon each other as in the present case, the statute must be dealt with as a whole and as such invalidated or upheld. *Johnson* v. *State,* (N. J.) 38 L.R.A. 373, 37 Atl. 949; *Riccio* v. *Hoboken,* 63 L.R.A. 485; *Carter* v. *Carter Coal Co.,* 298 U.S. 238, 80. L. ed. 1160; and *Williams* v. *Standard Oil Co.,* 278 U. S. 234, 73 L. ed. 287.

■ 2. The second error assigned is that the trial court erred in holding that the plaintiff had standing or lawful interest to institute this suit.

The frivolousness of this assignment is so patent, that we do not deem it necessary to give it as extensive consideration as was accorded to it by the trial judge in his able and well-reasoned opinion.

It is an admitted fact that the plaintiff was not one of the taxpayers who paid the property tax and that it did not have the benefit of the remission, and were. we to apply to this case the general rule that a discriminating statute is open to attack only by those against whom the discrimination is made, we would have to hold that the error assigned was committed. However, the general rule to which we have referred is subject to exceptions, one of which is that when the statute complained of contains provisions which are in-

timately connected with or inseparable from each other, any person affected by one of such provisions may set up the unconstitutionality of the statute, even though he is not one of the persons directly prejudiced by the discrimination.

The main question having been decided against the appellant, that is, that the objected law is void in its entirety, what ground could be adduced by us for holding that the plaintiff—who was compelled to pay about one hundred thousand dollars which was to be devoted to the payment of a loan that was never contracted and that, if contracted at all, would have been devoted to an unlawful purpose—has no standing or lawful interest to sue for the recovery of that which was illegally collected from it and which it paid under protest? It would, indeed, be absurd to hold that a paying taxpayer who has timely paid five dollars in taxes and who failed to receive the benefit of the remission can attack the statute, whereas a cigarette manufacturer who has been compelled to pay one hundred thousand dollars for raising a fund which was to be devoted to cover the deficiencies caused by the illegal remissions, has no standing or interest to seek the protection of the courts against the illegal exaction to which he has been subjected. See *Shinn* v. *Oklahoma City*, 87 Pac. (2d) 136; 11 Am. Jur. 755; *Conard* v. *State*, 16 Atl. (2d) 121; *State* v. *Louisiana Coca-Cola Bottling Co.*, 124 So. 769; and *Federal Paving Corp.* v. *Prudisch* (Wisc. 293 N. W. 156).

Since the fundamental purpose of the statute for which the excise tax was levied and collected is invalid and contrary to the constitutional provisions, such collection must also be declared illegal; and since the payments have been made under protest, the plaintiff had the lawful interest and standing required to bring this action.

The assailed statute is contrary to the Organic Act and to the Federal Constitution for the additional reason that it deprives the plaintiff of its property without due

process of law in that it imposes on it a tax for a private and not for a public purpose. See *Savings and Loan Assn. v. Topeka,* 20 Wall. 655, 22 L. ed. 455; Cooley on Taxation, vol. 1, §174; *Cole* v. *City of La Grange,* 113 U. S. 1, 28 L. ed. 896; *U. S.* v. *Butler,* 297 U. S. 1, 80 L. ed. 477.

For the reasons stated the judgments appealed from will be affirmed.

Mr. Justice Snyder did not participate herein.